## *Ex parte* Lambert.

### *Application for Mandamus.*

52   79
100  649
102  365

52   79
121  607
122  145
122  147

1. *Office; a public trust.* — Under the Constitution and laws of Alabama an office is not property, but a mere public trust created for the benefit of the State and not for the advancement of the officer.

2. *Same; legislative power over.* — Unless expressly inhibited by the Constitution, the legislature has entire control over the compensation of officers, whether the office is created by statute or owes its origin to the Constitution.

3. *Art. XII. of Constitution; operation of.* — There is nothing in Art. XII. creating the "Bureau of Industrial Resources," or any other part of the Constitution, which prohibits a reduction, by a subsequent statute, of the compensation of the "Commissioner of Industrial Resources," as fixed by prior statutes at the time of his induction into office.

APPLICATION for *mandamus* renewed in this court after being refused by City Court of Montgomery, Hon. J. A. MINNIS presiding judge, upon a state of facts fully set forth in the opinion.

RICE, JONES, & WILEY, for appellant. — 1. The Controlling question in this case is, whether the power of our legislature over the "compensation" of the commissioner of the Bureau of Industrial Resources is *unlimited*.

2. If it had been intended by the framers of our Constitution to leave it in the discretion of the legislature *to reduce* the compensation of the commissioner to a sum known by all fair and intelligent men to be grossly inadequate and unreasonable for *the services expressly imposed* upon him by that instrument, — *after reasonable compensation* for those services had been previously fixed at the session specified in the Constitution, — then, clearly, nearly the whole of Article XII. of that Constitution was *useless*, and " is *form without substance*."

" *Affirmative words* are often, in their operation, negative of other objects than those affirmed; and in this case a negative or exclusive sense must be given to them, or they have no operation at all. It *cannot be presumed* that *any clause* in the Constitution is intended to be without effect; and, therefore,

[Ex parte Lambert.]

*such a construction is inadmissible,* unless *the words require it."* *Marbury* v. *Madison,* 1 Cranch, 174, and other cases cited in foot-note to *Vallandingham's case,* 1 Wallace.

3. The elaboration of unambiguous words, and the peculiarity of collocation, found in said Article XII. of our Constitution, clearly intended more than the mere establishment of a bureau whose virtual *destruction* could be effected *indirectly* by any legislature *subsequent* to the one which had performed *its constitutional duty* of passing " such laws and regulations as may be necessary for the *government* and *protection* of this bureau, and also to *fix* and *provide for the compensation* of the commissioner."

Obviously, there is no " *protection* " for this bureau, if each legislature *subsequent* to the one which did perform *its constitutional duty* has *the unlimited power* to take away " *compensation* " (a reasonable equivalent) for the services required *by the Constitution* of the commissioner, and from which no legislature can relieve him.

After such " *compensation* " had been fixed by the legislature at its first session after the adoption of the Constitution, the power of a subsequent legislature over the compensation was *not unlimited.* No subsequent legislature could constitutionally reduce the compensation so fixed to a sum which courts, in the exercise of their " *judicial knowledge,*" and in view of the *number and nature of the duties absolutely imposed by the Constitution upon the commissioner,* are fully convinced *is not a reasonable equivalent or recompense for the discharge of those duties.*

JOHN W. A. SANFORD, Attorney General, *contra.* — 1. Except as restrained by the state and federal constitutions, the power of the legislature is unlimited. *Dorman* v. *State,* 34 Ala. 216. Unless, therefore, there is some restraint imposed by the Constitution, the general assembly has unlimited control over the compensation of the " Commissioner of Industrial Resources."

2. There is no warrant in the Constitution for the position that the legislature has no power over this " compensation." It is expressly provided that the compensation of certain officers shall not be diminished during their terms ; but from the class of officers thus protected the " Commissioner of Industrial Resources " is carefully excluded. This must have been done with an object. Clearly the framers of the Constitution intended to leave the general assembly power to diminish his compensation if deemed expedient.

3. If it be conceded, as it must be, that the general assembly has some discretion and control over the salary of the commissioner, by what rule can a court determine whether that discretion and control have been wisely and properly exercised ?

[Ex parte Lambert.]

The general assembly is as competent to " fix " the compensation of the " commissioner " as the courts, and the courts have no authority to exercise that discretion and control for the general assembly by annulling laws reducing his compensation.

BRICKELL, C. J. — The 12th article of the Constitution declares " A Bureau of Industrial Resources shall be established, to be under the management of a commissioner, who shall be elected at the first general election, and shall hold his office for the term of four years." The duties of the commissioner are enumerated with some particularity, and the general assembly is required, at its first session after the adoption of the Constitution, " to pass such laws and regulations as may be necessary for the government and protection of the bureau, and also to fix and provide for the compensation of the commissioner." In obedience to this direction, the general assembly, at its first session, passed " An Act for the government of the Bureau of Industrial Resources," and fixed the salary or compensation of the commissioner at twenty-five hundred dollars per annum, " payable as in case of all other state officers." Pamph. Acts 1868, p. 55. The general assembly, at its recent session, reduced the salary to five hundred dollars per annum, and required the commissioner, as a condition on which his right to the salary should depend, to reside at the capital.

At the general election in 1872, the relator was duly elected commissioner, inducted into office, and when this latter act was passed, was in the performance of its duties and the enjoyment of its emoluments. Claiming a right to the salary as prescribed by the act of 1868, he applied to the auditor for a warrant on the treasury for so much thereof as was due for the month of February. The auditor, recognizing the right as claimed to so much of the salary as had accrued prior to the passage of the act reducing it, offered to issue a warrant therefor, and for the remainder of the month a warrant for so much as was due according to the last statute. This was refused by the relator, and an application was made to the city court for a *mandamus* compelling the auditor to draw a warrant for the amount of the salary according to the act of 1868. The city ourt overruled the application, and it is here renewed.

The grant of legislative power by the Constitution of the State is a general grant of all the legislative powers residing in the people as a sovereign community, subject only to such limitations and qualifications as are expressed in the Constitution of the State, or in the federal Constitution. *Dorman* v. *State,* 34 Ala. 216 ; *Ex parte Dorsey,* 7 Port. 293. Within the legislative power rests the creation and abolition of public offices,

VOL. IV.                6

the enlargement or diminution of the duties public officers are required to discharge, and the measure of compensation they may receive. In the absence of express inhibitions in the state Constitution, the legislative power is in this respect supreme. If the Constitution creates an office, prescribes its duties, and the mode of appointment, it is not competent for the legislature to create another officer to discharge the same duties, and direct his appointment in a different manner, but it may increase or diminish the duties and compensation of the officer. *Warner* v. *The People*, 2 Denio, 272.

The Constitution creates the office of " Commissioner of Industrial Resources," prescribes the duties of the incumbent, but declares he shall be required " to perform such other duties as the general assembly may require." It does not fix his compensation, but commits that to the legislative power. The office, unlike the offices known to the common law, which, lying in grant, were deemed incorporeal hereditaments, has in it no element of property. It is not alienable or inheritable. It is a personal public trust, created for the benefit of the State, and not for the benefit of the individual who may happen to be its incumbent. The measure of his compensation is properly submitted to the legislative power, to be determined in view of the condition of the State, and the necessity for and importance of the discharge of the duties of the office. These will vary from time to time, and will demand as they vary a diminution or enlargement of the compensation. Whoever accepts the office, if he accepts it for the compensation only, has f. 'l knowledge of the power of the legislature, and no cause of complaint if they exercise it. He accepted voluntarily, and can voluntarily resign if the compensation is not adequate.

The Constitution creates an executive department, consisting of a governor, lieutenant governor, secretary of state, auditor, treasurer, and attorney general, all of whom are elective by the people. It declares they shall at stated times receive for their services a compensation to be established by law, which shall neither be increased or diminished during the period for which they shall have been elected. So the judges of the supreme court, circuit courts, and courts of chancery, it is declared shall at stated times receive for their services a compensation which shall not be diminished during their continuance in office. Whenever it is contemplated that the compensation of a public officer shall be exempt from legislative control, the Constitution has so expressly declared. It has not so declared as to the " Commissioner of Industrial Resources," but commits his compensation to the discretion of the legislative power.

It has been urged that the courts must know five hundred

dollars is not adequate compensation for the duties the Constitution enjoins. This seems to us an imputation of judicial knowledge which it would be difficult to support on principle or authority. If we were charged with such knowledge, and should esteem the compensation prescribed inadequate and unreasonable, we would be powerless to correct the evil. No court has power to set aside or disregard a law, because it is supposed to conflict with sound morality, natural right, or abstract justice. If it cannot be clearly seen that the general assembly has transcended its power, or violated some provision of the federal Constitution, the duty of the courts is obedience to its enactments.

We can reach no other conclusion than that the relator's compensation was subject to diminution at the will of the legislature, and that after the passage of the act reducing it, the auditor could not legally draw a warrant except for the sum it fixes. The application is therefore denied.