(84 South. 757)

PILLANS et al. v. HANCOCK et al.
(1 Div. 130.)

(Supreme Court of Alabama. Dec. 4, 1919. Rehearing Denied Jan. 1, 1920.) ·

1. STATUTES ⬥120(5)—ACT RELATING TO GOVERNMENT OF MUNICIPALITIES HELD VOID FOR FAILURE TO EXPRESS SUBJECT OF ACT IN TITLE.

Act Sept. 20, 1919 (Acts 1919, p. 487), entitled "An act to amend an act * * * approved April 8, 1911, and as amended by an act approved September 28, 1915, * * * by providing for selection and election of a mayor and commissioners," etc., held violative of Const. 1901, § 45, in not clearly expressing subject in its title, since the purpose of such act, as expressed in its title, is to amend previous acts relating to the commission form of government, or, if the amendatory feature of the title be stricken as surplusage, is to provide for a commission form of government, in view of provision for selection of "mayor and commissioners," where as the body of the act, in providing for election of ward representatives to have no part in the executive functions, and a mayor to have no part in the legislative functions, re-establishes an aldermanic form of government, notwithstanding naming of representatives as "commissioners," in view of Acts 1915, · p. 770.

2. STATUTES ⬥105(1)—CONSTITUTIONAL REQUIREMENT AS TO ONE SUBJECT, CLEARLY EXPRESSED IN TITLE, CONSTRUED.

Const. 1901, § 45, requiring each law to contain but one subject, to be clearly expressed in its title, should, be liberally construed in favor of legislative enactments, when they are reasonably cognate or germane to the title; but a title that is so misleading and uncertain that the average legislator or person reading it would not be informed of the purpose of the enactment is insufficient.

3. STATUTES ⬥107(5)—ACT RELATING TO GOVERNMENT OF MUNICIPALITIES HELD VOID AS EMBRACING TWO SUBJECTS.

Act Sept. 20, 1919 (Acts 1919, p. 487), contains two subjects, in violation of Const. 1901, § 45, in that it directly attempted not only to provide a form of government for cities from 50,500 to 100,000 inhabitants, but indirectly changed or affected the government of towns and cities under 1,000 inhabitants, or between 50,000 and 50,500 not specially embraced therein, by confining them to the aldermanic form of government, by depriving them of the right to adopt the commission form, by repealing act April 8, 1911 (Acts 1911, p. 330) and act Sept. 28, 1915 (Acts 1915, p. 869).

4. CONSTITUTIONAL LAW ⬥48—STATUTE PRESUMED TO BE VALID.

A statute is presumed to be valid, and should not be condemned, unless the court is satisfied beyond a reasonable doubt that it is repugnant to the Constitution.

5. CONSTITUTIONAL LAW ⬥45—COURTS HAVE MANDATORY DUTY OF UPHOLDING PROVISIONS OF CONSTITUTION VIOLATED BY STATUTES.

When acts clearly violate imperative provisions of the Constitution, it is the mandatory

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

duty of the court to uphold and enforce the provisions of the Constitution.

McClellan, Gardner, and Thomas, JJ., dissenting.

Appeal from Circuit Court, Mobile County; Saffold Berney, Judge.

Quo warranto by Alex Hancock and the councilmen elected with him to oust Harry Pillans and his associate commissioners, as the governing body of the city of Mobile. From a decree of ouster, respondents appeal. Reversed and rendered.

The title of the act directed to be set out is as follows:

An act to amend an act entitled "An act to provide and create a commission form of government and to authorize the adoption of the same in all cities and towns in the state of Alabama which now are not or hereafter may not be, within the influence or operation of any other valid legislative enactment authorizing or adopting such form of government; to regulate the selection and election of commissioners and their terms of office and retention in and recall from office; to provide for the selection of one commissioner as mayor, and the retention in office of certain officials; to fix the powers, duties and compensations of such commissioners; to punish improper conduct in connection with elections and petitions hereunder; to abolish boards of public work, police commissioners, councilmen, aldermen and certain other city and town officials of such municipalities as adopt the said form of government; and generally to authorize and provide for the creation and maintenance of said commission form of government," approved April 8th, 1911, and as amended by an act approved September 28th, 1915, by amending the title thereof, and by amending said act so that it shall apply to cities which have a population of exceeding fifty thousand five hundred and not more than one hundred thousand, according to the last federal census, and which may hereafter have such population according to any federal census hereafter taken, and to no others, by providing for the selection and election of a mayor and commissioners and fixing their terms of office and compensation, by abolishing certain offices, by fixing the powers, duties and liabilities of such mayor and commissioners, by creating certain new offices of such cities and providing for the selection of the incumbents thereof, and generally by prescribing a form of municipal government for such cities.

R. H. & R. M. Smith & Middleton and Stevens, McCorvey & McLeod, all of Mobile, for appellant. The title of the act contains two subjects. 46 Ala. 603; 1 Lewis, Sutherland Stat. Const. §§ 237, 246, 340; 36 Cyc. 1031; 43 Ala. 231; 86 Ala. 20, 5 South. 420; 87 Ala. 240, 6 South. 267, 4 L. R. A. 742; 75 Ala. 535; 119 Ala. 209, 24 South. 416. The title does not express the subject. 46 Ala. 340; 92 Ala. 94, 9 South. 225; 166 Ala. 366, 52 South. 61; 118 Tenn. 390, 103 S. W. 798, 121 Am. St. Rep. 1002; 175 Ala. 579, 57 South. 942. The act is a local act. 195 Ala. 83, 70 South. 744; 153 Ala. 648, 45 South. 175; McQuillin, §§ 200, 204, 118 Cal. 401, 50 Pac. 691; 55 Ohio St. 1, 44 N. E. 516.

Webb, McAlpine & Grove, of Mobile, for appellee. There are not two subjects in the title. 124 Ala. 4, 27 South. 438; 196 Ala. 500, 71 South. 724; 116 Ala. 186, 22 South. 454; 75 Ala. 533; 87 Ala. 240, 6 South. 267, 4 L. R. A. 742; 122 Ala. 138, 27 South. 327; 196 Ala. 460, 71 South. 699; 196 Ala. 486, 71 South. 709; 162 Ala. 226, 50 South. 238; 197 Ala. 1, 72 South. 320; 107 Ala. 444, 19 South. 909, 32 L. R. A. 520; 136 Tenn. 136, 189 S. W. 62; 118 Tenn. 390, 103 S. W. 798, 121 Am. St. Rep. 1002. Any superfluous amendatory words may be stricken, and the act, if capable of standing as an original, independent, and complete piece of legislation, will be upheld. 202 Ala. 490, 80 South. 874; 197 Ala. 1, 72 South. 320; 200 Ala. 279, 76 South. 45; 154 Ala. 464, 45 South. 660; 79 Ala. 1; 145 Ala. 477, 40 South. 135. The subject of the act is clearly expressed in the title. 143 Ala. 561, 39 South. 357; 45 Ala. 234; 180 Ala. 473, 61 South. 597; 180 Ala. 505, 61 South. 646; 178 Ala. 77, 59 South. 473; 154 Ala. 151, 45 South. 841; 170 Ala. 41, 54 South. 195; 170 Ala. 155, 54 South. 209. The act is not a local law. 160 Ala. 133, 49 South. 441, 686; 142 Ala. 98, 38 South. 679; 154 Ala. 249, 46 South. 268; 145 Ala. 541, 40 South. 144; 122 Ala. 21, 26 South. 162; 129 Ala. 23, 30 South. 348; 181 Ala. 646, 62 South. 31; 175 Ala. 579, 57 South. 942.

ANDERSON, C. J. This is a proceeding by the appellees to oust the appellants from the governing board of the city of Mobile, and to declare the said appellees entitled to the offices under and by virtue of an election pursuant to an act of the Legislature of 1919, approved September 20, 1919 (Acts 1919, p. 487), providing for a change of the existing government, and abolishing the offices held by the appellants and creating the offices to which the appellees were elected. The answer does not controvert the legality or regularity of the appellees' title to the said offices or the abolishment of the old offices if the said act was a valid enactment, but contends that said act is unconstitutional. So the result of this case must depend upon the constitutionality vel non of the act in question.

[1] Whether we treat the title to the act in question (which said title will be set out by the reporter) as indicating an amendatory act, or strike as surplusage so much thereof as purports to amend the existing acts referred to, we still have a title purporting a continuation of the commission form of government rather than the creation of the aldermanic form, though what we here say about striking the amendatory feature of the title is a mere concession for the immediate purpose of discussing the first

proposition hereafter treated, as we will demonstrate later on that said portion of the title cannot be stricken. The title without change expresses the purpose of amending the acts of 1911 (Acts 1911, p. 330) and 1915 (Acts 1915, p. 869), and substituting therefor the amendatory act in question, dealing only with cities of not less than 50,500 or exceeding 100,000 inhabitants, and only such amendments thereto would be permissible as may be germane or cognate to the title of the acts so amended. The acts so amended deal with the commission form of government, as distinguished from the aldermanic form, and any amendment under their title would be permissible which related to or regulated such government without changing the form thereof; but an act making a distinct or radical change from what is generally known and accepted as the commission form would introduce a new and distinct subject and one different from the one dealt with in the title. On the other hand, if permitted to expunge the amendatory feature of the title of the present act, and by the inversion of sentences and transposition of words, we would perhaps have a title prescribing generally a form of municipal government for cities of not less than 50,500 and not exceeding 100,-000, by providing for the selection of "a mayor and commissioners," by creating certain offices and providing for the selection of the incumbents, etc.

While such a title has a provision of generality, yet it is restricted by the quo modo as to who shall constitute the governing board, to wit, "a mayor and commissioners," thereby meaning commissioners conformable to those generally designated and provided for in the commission form of government statutes, to wit, commissioners appointed or selected from the city at large, or when elected to be chosen by the voters of the city at large, and who shall exercise co-ordinate authority and power with each other and with the mayor or president of the board as to the executive and legislative functions, and as distinguished from aldermen who are selected from their respective wards by the voters of said ward, though sometimes elected by the voters at large, who usually compose a larger number and who exercise the legislative functions to the exclusion of the mayor, except as to the veto power. Therefore the title indicates a continuation of the commission form of government; so the question is: Does the body of the act conform to the title, or does it provide an aldermanic, or some other form, different from the commission form? The commission form of government seems to be generally understood as composed of a board of a few persons, usually not exceeding five, with equal power and authority as to all governmental functions, that is, executive and legislative, with the president of the board, sometimes designated

as mayor, but who does not exercise all the executive powers and is not excluded from the legislative functions. 19 R. C. L. § 51, p. 745.

"The term 'commission form of government' is a generic one, and employed in referring to the government of cities administered by a small number of officials exercising both legislative and executive authority." General Statistics of Cities, 1915, issues by Department of Commerce, Bureau of Census, of U. S.

See, also, many acts of recent legislative sessions as to commission government; and to appreciate a distinction, compare them with the general municipal laws pertaining to the aldermanic form of government. Volume 1, Code of 1907. Indeed, our lawmakers realize a decided difference in the two forms, and have enacted a statute providing a method for going from the commission form to the aldermanic form. Acts 1915, p. 770; State ex rel. Terry v. Lanier, 197 Ala. 1, 72 South. 320.

A close examination of the act in question will disclose that it practically sets up the old aldermanic form of government, with just a few immaterial commission form features; the principal one being naming the ward representatives commissioners, instead of aldermen, and perhaps paying them more than the usual compensation of the old aldermen, and providing that they should be selected by the voters at large, instead of by those of the respective wards, though they are not to be selected from the city at large, but from each ward. The governmental functions, however, are not consolidated in the entire governing board, the executive functions are given to the mayor, and the legislative functions are given to the so-called commissioners. While they are named commissioners, the character of the office must be determined largely from the authority and power given them. The law not only looks to substance rather than form, but abhors the latter when used as a mere cloak or disguise to conceal and mislead as to the former.

[2] Section 45 of the Constitution of 1901, among other things, provides:

"Each law shall contain but one subject, which shall be clearly expressed in its title."

Does the title in question clearly express the subject of the enactment? We think not. While we have heretofore held that this constitutional provision is mandatory, it should be liberally construed in favor of legislative enactments when they are reasonably cognate or germane to the title; but when the title is so misleading and uncertain that the average legislator or person reading the same would not be informed of the purpose of the enactment, it is insufficient. We do not think that any one, from reading the ti-

tle in question, would be informed that the Legislature would adopt a' law providing a form of government like the one set up, as the title indicates a continuation of the commission form of government, and does not even suggest a change from such form to the aldermanic form. This case presents a typical example of what is termed "log-rolling or hodge-podge legislation," as condemned by Mr. Cooley and as discussed and stressed by our court in the cases of Lindsay v. U. S. Savings Ass'n, 120 Ala. 156, 24 South. 171, 42 L. R. A. 783, and Ballentyne v. Wickersham, 75 Ala. 533.

[3] The act also contains two subjects, and further violates section 45 of the Constitution. The title and the act both provide for an amendment of the old acts by a substitution therefor of the amendatory act, thus resulting in an absolute repeal of the old law, whether some of its features were or were not in conflict with the new enactment. The result is the new enactment not only provides a form of government for the cities expressly dealt with, to wit, from 50,500 to 100,000 inhabitants, but by repealing the acts of 1911 and 1915 confines all towns or cities under 1,000 inhabitants, or between 50,000 and 50,500 to the aldermanic form of government, by depriving them of the right, under said acts, to adopt the commission form of government. In other words, the act has directly attempted to provide a form of government for the cities there included, and has indirectly changed or affected the government of a certain class of cities and towns not specially embraced in same, but included in the amended acts of 1911 and 1915.

We are aware of the rule as laid down in the cases of Gandy v. State, 86 Ala. 20, 5 South. 420, Thomas v. State, 124 Ala. 48, 27 South. 315, and Hawkins v. Roberts & Son, 122 Ala. 130, 27 South. 327. These cases, however, authorize the striking of a part of the title as immaterial and surplusage when the title is otherwise complete, and also refer to the amendment of certain acts when the bill is an independent act, and of its own force and effect would repeal so much of the old acts as may be in conflict therewith. Here we have, not only a title proposing an amendment of the acts referred to in their entirety, but the enacting part of the bill provides, in effect, the substitution of the new law for the old ones. It says that said acts be amended, etc., "so as to read as follows," and which shows an entire repeal of the amended acts and a substitution of the new one therefor. Allgood v. Sloss, etc., Co., 196 Ala. 500, 71 South. 724. True, the repealing clause of the act evinces only a purpose of repealing all laws, only to the "extent of a conflict"; but this is, of course, referable to laws other than the acts of 1911 and 1915 which are expressly included in and substituted by the act in question.

[4, 5] We have observed the well-established rule of considering this act with the presumption of its validity and with the realization that it should not be condemned, unless the court is satisfied beyond a reasonable doubt that it is repugnant to the Constitution, but are constrained to hold that the repugnancy is so glaring and palpable that we have no reasonable avenue of escape from declaring the same null and void; and when acts clearly violate imperative provisions of the Constitution it is the mandatory duty of the court to uphold and enforce our organic law. We are aware of the fact that the act in question was a solemn attempt on the part of the Legislature, and that its provisions have been accepted by the voters of Mobile, and who have expressed a choice in favor of the appellees; but results must not deter courts from enforcing the mandatory provisions of our Constitution. "Duty is ours; consequences are God's."

The judgment of the circuit court is reversed, and one is here rendered dismissing the information of the relators.

Reversed and rendered.

SAYRE, SOMERVILLE, and BROWN, JJ., concur.

McCLELLAN, J. (dissenting). Upon consideration of the several argued objections to the constitutionality of the act under review, I am of the opinion that such objections are not well founded, and therefore that the act is not invalid.

GARDNER and THOMAS, JJ., concur.