**BOUCHELLE et al. v. STATE HIGHWAY COMMISSION et al. (3 Div. 674.)**

(Supreme Court of Alabama.   June 19, 1924.)

**1. Constitutional law ☞12, 15—Principles of constitutional construction stated.**

Every part of Constitution must be given effect if possible, and interpreted in light of laws and systems existing at time of its formulation, which are preserved so far as not repugnant to or inconsistent with its provisions; but narrow or literal constructions are not indulged except in favor of elemental rights or settled principles of republican government.

**2. Constitutional law ☞70(3)—Court cannot question wisdom of legislation or limit legislative power.**

It is not for court to question wisdom of legislation or limit legislative power.

**3. Highways ☞91—Act creating highway commission of 3 members in place of that of 12 members held constitutional.**

Acts 1923, p. 370, amending Acts Sp. Sess. 1921, p. 54, by providing for state highway commission of 3 members in place of commission of 12, as originally provided for by Acts 1919, p. 890, held not contrary to constitutional amendment, adopted pursuant to Acts Sp. Sess. 1921, p. 35, defining duties of "the" state highway commission.

**4. Constitutional law ☞16—Extraneous representations by newspapers, public officials, etc., not considered in construing constitutional amendment authorizing road construction.**

While contemporary history and exposition so authentic as to challenge judicial notice may be consulted in construing doubtful constitutional provisions, new term changing entire meaning and operation of constitutional amendment, adopted pursuant to Acts Sp. Sess. 1921, p. 35, requiring state highway commission to construct and maintain highways between county seats, cannot be inserted by consideration of extraneous promises or representations of newspapers, public officials, etc., that no state money would be expended until matched by money from federal treasury under Federal Aid Law.

**5. Statutes ☞125(7)—Title of act changing number of state highway commissioners held not misleading as not correctly expressing such subject in title; "further."**

Title of Acts 1923, p. 370, "An act to amend an act approved October 31, 1921, entitled an act to provide further for the construction, repair, and maintenance of the public roads," etc., held not misleading and deceptive as not clearly expressing subject, as required by Const. 1901, § 45, in respect to change in number of state highway commissioners; "to provide further" not requiring Legislature to leave prior law intact, as "further" may be used to introduce negation or qualification of precedent matter.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Further.]

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**6. Highways ⟨⟩107(1)—Highway commissioner held not disqualified by personal interest to vote for proposed location of state highway, "indirectly interested."**

State highway commissioner owning land, value of which will be greatly increased by location and construction of proposed state highway, *held* not "indirectly interested" in contract or agreement for construction or maintenance of road, within Acts 1923, p. 375, § 11½, so as to disqualify him to vote for such location.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Indirect—Indirectly.]

**7. Highways ⟨⟩107(1)—Highway commissioners not affected by common-law principles governing qualifications of judges.**

State highway commission, not being court exercising judicial function, but administrative board, its members are not affected by common-law principles governing qualification of judges and judicial officers.

**8. Highways ⟨⟩107(1)—Highway commissioner benefited by road already constructed held not disqualified to vote for location of state highway including such road.**

Highway commissioner owning land, value of which was increased by construction of road at joint expense of federal, state, and county ·governments, before he became commissioner, *held* not disqualified to vote for location of state highway, including such road.

**9. Highways ⟨⟩107(1)—Location of highways by state highway commission cannot be reviewed by courts, in absence of fraud or corruption.**

State highway commission, in locating highways connecting county seats, under Acts 1923, p. 370 et seq., exercises administrative and quasi legislative function, which cannot be reviewed by courts, in absence of fraud or corruption.

**10. Highways ⟨⟩103 — Highway commission held not to have abused discretion in selecting route of state highway.**

State highway commission *held* not to have abused discretion, under constitutional amendment, adopted pursuant to Acts Sp. Sess. 1921, p. 35, to select most feasible permanent route for state highways between county seats, having due regard to public welfare, where that selected, though not most direct route, was adopted, as part of state trunk road, by Acts 1915, p. 366, and approved by commissioners' courts and preferred by majority of people of both counties.

Appeal from Circuit Court, Montgomery County; Leon McCord, Judge.

Bill in equity by Henry T. Bouchelle and others against the State Highway Commission and the members thereof, to enjoin the construction of a public highway. From a decree dissolving temporary injunction, complainants appeal. Affirmed.

Horace C. Wilkinson and W. B. Harrison, both of Birmingham, for appellants.

The word "the," used in the amendment with reference to ·the commission, designates the commission then in existence. Wade v. State, 207 Ala. 1, 92 South. 101; 38 Cyc. 250. That commission is not subject to change by the Legislature. Perkins v. Corbin, 45 Ala. 103, 6 Am. Rep. 698; Winter v. Sayre, 118 Ala. 1, 24 South. 89; Taylor v. Woods, 52 Ala. 474; Oldham v. City of Birmingham, 102 Ala. ·357, 14 South. 793; Ex parte Johnson, 203 Ala. 579, 84 South. 803; State v. Birmingham So., 182 Ala. 475, 62 South. 77, Ann. Cas. 1915D, 436; State v. McGough, 118 Ala. 159, 24 South. 395; Fulton v. State, 171 Ala. 572, 54 South. 688; Harris v. Walker, 199 Ala. 51, 74 South. 40; Ex parte W. U. Tel. Co., 200 Ala. 496, 76 South. 438; Seals v. Matthews, 164 Ala. 582, 51 South. 337, 20 Ann. Cas. 991. The court takes judicial knowledge of the fact that, prior to the adoption of the amendment, the people were assured that the funds provided would be expended by a commission consisting of one member from each. congressional district, and that such funds would be expended only when matched by federal aid, and these matters are to be taken into consideration in interpreting the amendment. L. & N. v. Holland, 173 Ala. 675, 55 South. 1001; Prowell v. Hasty, 142 Ala. 80, 39 South. 164; L. & N. v. State, 201 Ala. 317, 78 South. 93; Fox v. McDonald, 101 Ala. 51, 13 South. 416, 21 L. R. A. 529, 46 Am. St. Rep. 98; Davis v. State, 16 Ala. App. 397, 78 South. 313. An act "to further provide" must be consistent with the provision already made. Cooley's Const. Lim. (7th Ed.) 218; 153 Ala. 112, 45 South. 226; Lamar Canal Co. v. Amity Co., 26 Colo. 370, 58 Pac. 600, 77 Am. St. Rep. 261; Harper v. State, 109 Ala. 28, 19 South. 857; Troy v. Smith, 187 Ala. 411, 65 South. 942; Dunning v. Holcombe, 203 Ala. 546, 84 South. 740; Ex parte Cowert, 92 Ala. 94, 9 South. 225; State v. So. Ry., 115 Ala. 250, 22 South. 589; Blair v. Scribner, 67 N. J. Eq. 583, 60 Atl. 213; Shaw v. Southland (Tex. Civ. App.) 185 S. W. 915; Galpin v. City of Chicago, 269 Ill. 27, 109 N. E. 713, L. R. A. 1917B, 176; Jones v. Executors, 19 N. J. Law, 127; Hitchings v. Van Brunt, 38 N. Y. 335. The title of the act of 1923 does not clearly express its purpose. Leslie v. Bracken, 154 Ala. 151, 45 South. 841; State v. Nelson, 210 Ala. 663, 98 South. 715; Pillans v. Hancock, 203 Ala. 570, 84 South. 757. The commission does not possess unlimited power in the selection of road sites. Phoenix Assur. Co. v. Fire Dept., 117 Ala. 631, 23 South. 843, 42 L. R. A. 468. Ex parte Chase, 43 Ala. 303; 18 C. J. 1134; 28 Cyc. 1597. Two members of the commission, being interested, were disqualified to participate in locating the road. Acts 1923, § 11½; Gill v. State, 61 Ala. 172; Medlin v. Taylor, 101 Ala. 239, 13 South.

---

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

310; Ex parte Cornwell, 144 Ala. 497, 39 South. 354; W. O. W. v. Alford, 206 Ala. 18, 89 South. 528; Douglass v. City Council, 118 Ala. 599, 24 South. 745, 43 L. R. A. 376.

Harwell G. Davis, Atty. Gen., James J. Mayfield, of Montgomery, R. B. Evins, of Birmingham, Hugh Mallory, of Selma, and J. F. Aldridge and Emmett F. Hildreth, both of Eutaw, for appellees.

The title of the act is sufficient. Judson v. Bessemer, 87 Ala. 240, 6 South. 267, 4 L. R. A. 742; State v. Rogers, 107 Ala. 444, 19 South. 909, 32 L. R. A. 520; Glasscock v. State, 159 Ala. 90, 48 South. 700; Mobile v. Comm., 180 Ala. 489, 61 South. 368; State v. Brocken, 154 Ala. 151, 45 South. 841; State v. Gunter, 170 Ala. 165, 54 South. 283; Street v. Hooten, 131 Ala. 492, 32 South. 580; People v. Collins, 19 Wend. (N. Y.) 56; State v. Hubbard, 148 Ala. 391, 41 South. 903; Miller v. Griffith, 171 Ala. 337, 54 South. 650. The highway commission is not created by the Constitution, but is the creation of the Legislature, subject to its control and will. Ex parte Lambert, 52 Ala. 79; State v. Black, 199 Ala. 321, 74 South. 387. The courts will not undertake to control the discretion of the commission except in the case of abuse amounting to fraud. Board v. Merrill, 193 Ala. 521, 68 South. 971; Grider v. Tally, 77 Ala. 422, 54 Am. Rep. 65; Taylor v. Kolb, 100 Ala. 607, 13 South. 779; Lehmann v. State Board, 208 Ala. 185, 94 South. 94.

SAYRE, J. Appellants, citizens, and taxpayers of Greene and Sumter counties, seek by their bill in this cause to enjoin the state highway commission and the members thereof from constructing or entering into any contract for the construction of a highway known as the Greene county project No. S-4, and referred to in the bill as the Gainesville detour. The proposed highway will pass through Greene county from Gainesville on the eastern margin of Sumter via Mt. Hebron and Clinton to Eutaw in Greene. Appellants disclaim any purpose to have the court prescribe the route of the proposed highway, but the commission, in locating and providing for the construction of the Greene county project, is acting under the obligation and authority of the statute (Acts 1923, p. 370 et seq., § 21), which requires that "the state highway commission or highway department shall locate, construct and maintain highways and state trunk roads so as to connect each county seat with the county seat of the adjoining county by the most direct and most feasible route by a permanent road, having due regard to the public welfare and to connect the county seats of the several border counties at or near the state line with a public road in the border states," is proceeding to construct a highway, or part of a highway, which will connect Livingston in Sumter with Eutaw in Greene, and appellants, by way of showing that the route proposed is not such as the commission is required to locate, allege that a highway from Livingston to Eutaw via Epes and Boligee would so obviously better meet the requirements of the statute that its location as proposed by the commission must be adjudged a gross abuse of the discretion lodged in the commission by law, and moreover they allege that one member of the commission is interested in the proposed location by reason of the fact that he owns a large body of land in Sumter county near the proposed route, the value of which will be greatly increased by such location, that another member owns much land in Perry county the value of which will be increased by a similar indefensible detour, and that the action of the commission in each case has been determined by an agreement between them, constituting a majority of the commission, that each, in consideration of the vote of the other, would support the two alleged detours, thus, in effect, charging that the so-called detour under consideration was located as the result of a fraud upon the law, though the pleader refrains from drawing the appropriate conclusion—leaves that for the court. This, we believe, is a fair statement of the bill in outline.

[1-3] But, before coming to the facts affecting the location of the proposed Greene county project, it will be proper to consider appellants' contention that the commission as now constituted and as constituted at the time of the location of the highway in question had no authority of law for the location or construction of any highway whatever. This contention is based upon the following constitutional and legislative history: The Legislature, by its act approved September 30, 1919 (Acts 1919, p. 890 et seq.), created a state highway department to consist of a state highway commission and a state highway engineer, the state highway commission to consist of the senior professor of civil engineering in the Alabama Polytechnic Institute, the state geologist, and ten other members to be appointed by the Governor. In general terms it may be stated that the state highway commission thus constituted was required to locate, construct, and maintain the highways or state trunk roads "so as to connect each county seat with the county seat of the adjoining county by the most direct or most feasible route by a permanent road, having due regard to the public welfare." By the act of October 29, 1921 (Acts Sp. Sess. p. 35), the Legislature submitted to the people of the state an amendment to the Constitution authorizing the state to locate, construct, improve, repair, and maintain public roads, highways, and bridges, and to that end the issue and sale of nego-

tiable interest-bearing bonds. The amendment so proposed—and adopted—contained, inter alia, this provision:

"The state highway commission or highway department shall locate, construct, and maintain highways and state trunk roads so as to connect each county seat with the county seat of the adjoining county by the most direct or most feasible route by a permanent road, having due regard to the public welfare."

And this:

"It shall be the duty of said highway commission or highway department to equitably apportion among the several counties the expenditure of both money and labor and the time or times of making such investments," etc.

On October 31, 1921 (Acts Sp. Sess. p. 54) the Legislature passed an act creating a state highway department for the state of Alabama to be constituted as was the highway department created by the act of September 30, 1919, the state highway commission having the power, in broad terms, to "consider and determine all questions relating to the general policy of the state highway department and the conduct of its work and in the performance of its duties" (section 2), and this act was in full force and effect when the constitutional amendment was adopted.

The contention in the brief for appellants is that the adoption of the constitutional amendment had effect to make the state highway commission or highway department as then constituted a constitutional body wholly beyond the reach or power of the Legislature and, hence, that the act of September 24, 1923 (Acts, p. 370), entitled, "An act to amend an act approved October 31, 1921, entitled an act to provide further for the construction, repair, and maintenance of the public roads, bridges and highways in this state," is unconstitutional and void, since it undertakes to replace the commission consisting of the senior professor of civil engineering in the Alabama Polytechnic Institute, the state geologist, and ten other members, by a state highway department consisting of a state highway commission of three members.

We cannot assent to the proposition that by the adoption of this amendment the state highway commission as then constituted became a constitutional body, above and beyond the power of the Legislature to change. The amendment very clearly contemplates that the expenditure of the $25,-000,000, authorized thereby, shall, when and to the extent authorized by the Legislature, be made under direction of a state highway commission, and refers to the highway commission then in existence; but we are far from believing that every detail of the act creating the commission thereby became in every detail crystallized and embedded in the Constitution. It is, of course, true that every part, even every word, of the Constitu-

tion must be given effect where possible, and it is equally true that the Constitution—

"must be read and interpreted, in the light of the laws and systems existing at its formation, which are not destroyed, but preserved, so far as not repugnant to or inconsistent with its provisions." Winter v. Sayre, 118 Ala. 1, 24 South. 89.

But narrow or literal constructions are not indulged except in favor of elemental rights or settled principles of republican government. Here no such rights or principles are involved. The Legislature has simply decreed that a commission of three members can better execute the purposes of the amendment than a commission of twelve. It is not for the court to question the wisdom of that decree or to undertake a limitation upon the legislative power, which, according to an unbroken line of decisions, is supreme, in the absence of express inhibition. Ex parte Lambert, 52 Ala. 79. The whole argument for appellants' contention on this point rests upon the fact that the amendment uses the definite article when referring to "the commission," meaning thereby, as the argument runs, the commission in every, the smallest, particular, as organized at the time of the adoption of the amendment. We might concede that the duty rests upon the Legislature to maintain a competent commission as long, at least, as any part of the $25,000,000 fund shall remain to be expended by legislative authority, but the argument for anything more rests upon too narrow a basis. Our judgment is that the number of highway commissioners is not expressly—nor by necessary inference, if that may sometimes be the equivalent of express provision —regulated by the amendment and remains, therefore, within the discretion of the Legislature. Ex parte Lambert, supra. The reference to "the commission" no more makes the then existing number of commissioners a matter of constitutional determination than it confers constitutional perpetuity upon the office of state geologist, the senior professorship of civil engineering at the Polytechnic Institute, or the several county officers mentioned in the article on impeachments, for whom no constitutional tenure has ever been suggested. The emphasis placed upon the definite article is meticulous—carries no appeal to a just sense of constitutional values. We do not attach supreme importance to the analogy, but there is an analogy between the contention here made and the argument on another occasion urged upon the court— as appears in the report of State v. Black, 199 Ala. 331, 74 South. 387, that, because the Constitution, § 142, provided that "for each circuit there shall be chosen a judge," not more than one judge could be provided for each circuit. The court denied the contention. A like judgment was pronounced in Ex parte Lusk, 82 Ala. 519, 2 South. 140,

where, as in Ex parte Lambert, it was held that, in the absence of express provision to the contrary, the Legislature had the right to regulate a constitutional office, though it had no power to destroy. This upon the assumption—and it is nothing more than an assumption—that a highway commission in some form is necessary under the amendment.

[4] Another suggestion, going to the power of the commission in the premises, is that it has no right to locate the Gainesville route, for the reason that such route will not have the benefit of federal aid under the act of Congress known as the Federal Aid Law, assented to in section 21 of the act approved October 31, 1921. It is not suggested that the amendment contains any reference to the Federal Aid Law. The argument on this point comes to just this: That because public prints, officials, and speakers, advocating the adoption of the amendment, told the people that no money of the state would be expended unless and until matched, dollar for dollar, by money from the federal treasury, a clause to that effect must be read into the amendment. It is to be conceded that contemporary history and exposition, of such established authenticity as to challenge the judicial notice of the court, may be consulted in construing any article of doubtful import in the Constitution; but we have seen no authority—and we presume there is none—to the effect that a new term, changing the entire meaning and operation of a constitutional amendment, may be injected into its text upon consideration of the extraneous promises or misrepresentations, if any there were, of newspapers, public officials, and stump speakers, as to the terms and conditions, outside of the instrument, on which the amendment would be put into operation. It is not our purpose to write the first judgment to that effect. We presume rather that the people in adopting the amendment acted intelligently, and, if so, they saw that it contained no clause or word holding out the promise that the state's money would be expended only when matched by money from the federal treasury. Such alleged promises and representations cannot therefore operate as a limitation upon the power of the highway commission acting under legislative authority.

[5] In the next place it is insisted by appellants that the title of the act of September 24, 1923, is misleading and deceptive, for that its subject is not clearly expressed in its title, as required by section 45 of the Constitution. The title of the act is:

"An act to amend an act approved October 31, 1921, entitled an act to provide further for the construction, repair, and maintenance of the public roads, bridges and highways in this state."

The argument is that so much of the act as undertook to change the personnel of the highway commission—that is, the number of the commissioners—is not clearly expressed in the title, indeed, is not expressed at all. It is said, in short, that an act "to provide further" must be consistent with every provision of law already made, and then, as if in further definition, that the act of 1923 is inconsistent with the act of 1921, in that the last-named act established a state highway department consisting of a state highway commission and a state highway engineer, the commission in turn consisting of the state geologist, the senior professor of civil engineering in the Alabama Polytechnic Institute and ten others, whereas the amendatory act destroyed that department by substituting therefor a state highway department consisting of a state highway commission of three members. Conceding that the Legislature destroyed the old commission, by the same act it created a new commission, armed with all powers appropriate to the discharge of the duties of a highway commission such as the amendment to the Constitution contemplated, and this we hold was no breach of constitutional duty on the part of the Legislature. We have seen no adjudicated case holding that under the title "to provide further" the Legislature must leave prior law, prior legislative enactments, intact. The subject of the act of September 24, 1923, was the act of October 31, 1921, and the subject of the last-named act was "to provide further for the construction, repair, and maintenance of the public roads, bridges and highways in this state," which thus became in effect the title of the first-named act (Lewis v. State, 123 Ala. 84, 26 South. 516), a title giving ample notice of all the Legislature has done on the subject of public roads, bridges, and highways in this state (State ex rel. Mobile v. Board of Revenue, 180 Ala. 489, 61 South. 368).

It is entirely clear that by the use of the word "further" in the title of the act of October 31, 1921, some sort of reference to the act of September 30, 1919, was intended, the title of which, with some elaboration of details, covered the same general subject. The question still is whether the Legislature, under the title "to provide further," had the constitutional power to provide a highway commission of three to perform the offices theretofore performed by a commission of twelve. In our opinion the Legislature had such power—was not, by reason of the word "further" in the title of its act or acts, limited as appellants contend. Courts do not examine acts of the Legislature under a microscope, unless, indeed, upon rare occasion such examination may suffice to bring them into proper correlation with established principles of government. In this case it may be conceded that, as ordinarily used, "further" means in addition to, moreover, furthermore, and does not involve the idea of

inconsistency or repugnancy; but, on the other hand, it does not involve the notion of complete consistency; it may be used to introduce a negation or qualification of some precedent matter. Jones v. Creveling, 19 N. J. Law, 133. And certainly it would impress the man in the street, as it does us, that the court would proceed upon an exceedingly narrow and unsubstantial ground to declare the title in question, otherwise great, but permissible, generality, a restrictive title, preserving intact every particular of previous legislation—a wholly unsatisfactory reason upon which to predicate the constitutional invalidity of a legislative act amending, changing, reforming in some respects, the provisions of a precedent act on the same subject. The proposition is without authority. Jones v. Creveling, which we have already referred to; Hitchings v. Van Brunt, 38 N. Y. 335; Blair v. Scribner, 67 N. J. Eq. 583, 60 Atl. 211; Shaw v. Southland Ins. Co. (Tex. Civ. App.) 185 S. W. 915; and Galpin v. Chicago, etc., 269 Ill. 27, 109 N. E. 713, L. R. A. 1917B, 176—are cited. These cases support the proposition that the title of an act professing "to provide additional compensation for the state's attorney," without more, did not clearly express the purpose to reduce the compensation of the state's attorney (Galpin v. Chicago)—which would seem to be clear enough—or that "further" in private writings, wills, contracts, etc., according to its context, may have its strict meaning as merely "in addition to." Leslie v. Bracken, 154 Ala. 151, 45 South. 841, cited by appellants, is patently not in point. And so is Pillans v. Hancock, 203 Ala. 570, 84 South. 757. In the case before us we are clear to the conclusion that the word "further" in the title of the act had and has no other significance than that the Legislature would proceed again to legislate on the subject of roads, bridges, and highways, and that appellants' contention on this point is sustained by neither reason nor authority.

This brings us to a consideration of the facts shown by the sworn bill and answer, and the affidavits offered on the hearing of the motions to dissolve and discharge the temporary writ of injunction previously granted by an order of the court.

For one thing, it is charged in effect that the Gainesville-Mt. Hebron-Clinton route was located as the result of a corrupt agreement between two members of the state highway commission, in consideration of which each of the two voted for the location of a highway in the neighborhood of property owned by the other, thereby advancing their respective individual interests at the public expense; one of such proposed highways being the Greene county project. It will suffice to say of this charge that there is no evidence to sustain it.

[6] It appears that Commissioner Scruggs voted against the location and construction of the Greene county project—this for the sole reason, shown by his affidavit, that the proposed highway would not receive federal aid. With the sufficiency of that reason we are not now concerned. But this action of Commissioner Scruggs left the location and construction of the highway in question to depend upon the concurrence of Commissioners Rogers and Suttle. And in this connection it is alleged that Commissioner Rogers was disqualified to act by reason of interest. His interest is alleged to lie in the fact that he owns a large body of land in Sumter county, the value of which will be greatly increased by the location and construction of the proposed highway. The statute (section 11½, p. 375) provides that—

"No member of the state highway commission * * * shall be either directly or indirectly interested in any contract or agreement for the construction or maintenance of any road or bridge in this state. * * *"

[7, 8] There is no suggestion that any commissioner is directly interested in any contract or agreement for the construction or maintenance of the proposed highway. No such contract or agreement has been entered into, nor is there an intimation that any commissioner will be so interested at any time. The argument seems to be that Commissioner Rogers is or will be indirectly interested—which, we assume, means personally and financially interested—in any contract or agreement for the construction or maintenance of the highway in dispute, because he owns large tracts of land, the value of which will be greatly increased by the proposed location. This, we think, is not the indirect interest prohibited by the act. It might in some circumstances constitute an interest in the location of a highway, but not an interest, direct or indirect, in a contract or agreement for its construction or maintenance within the meaning of the act. But, it is said that, on common-law principles, Rogers is disqualified to act in the premises by reason of the interest stated above—is incompetent to sit as judge in his own case. A sufficient answer is that the state highway commission is not a court exercising judicial functions—it is an administrative board; it exercises also some delegable legislative functions; but it renders no judgments concerning the rights of parties. In case it becomes necessary for the commission to acquire for the state a right of way, it must go into the customary courts like any other corporation invested with the power of eminent domain. Its members are not affected by the common-law principles which govern the qualification of judges and judicial officers. Foot v. Stiles, 57 N. Y. 399. The act mentions but one disqualification, and that is exclusive because without such mention there would be no dis-

qualification. However, such direct individual pecuniary interest as would disqualify a judge can by no means be affirmed of Commissioner Rogers on the facts shown by the record. It is hard to see that he has any personal interest, except in that part of the proposed highway that extends from Livingston to Gainesville. He owns his residence in Gainesville, a small tract of land—160 acres—in that vicinity, and 7,000 or 8,000 acres of land in Sumter county, the bulk of which lies 5 or 6 miles northwest of the town. It seems likely that the construction of the highway from Livingston to Gainesville has given him better access to a railroad and so to a larger market for the products of his land, and this consideration, no doubt, other things remaining equal, has added to the value of his land. But that interest has no effect upon the decision of this cause, for so much of the proposed highway as lies between Livingston and Gainesville was constructed at the joint expense of federal, state, and (Sumter) county governments before he became a member of the commission, while, as for the road to Eutaw, it would be hard to differentiate his individual interest from that of the general public on any substantial ground.

[9, 10] Appellants' bill and the proof in the shape of ex parte affidavits submitted at the hearing draw a comparison between the Gainesville - Mt. Hebron - Clinton route and that by way of Epes and Boligee. The record affords no information as to other possible routes. The averment in effect is that the state highway commission, in locating the first-named route between Livingston and Eutaw in preference to the other, was guilty of an abuse of discretion tantamount to fraud. Obviously, the statute commits the location of the highways to be constructed and maintained by it to the discretion of the commission. The location of such highways is not a function of the courts. In that matter the commission, as we have before said in substance, exercises an administrative and quasi legislative function which, when free from fraud or corruption, cannot be reviewed by the courts. Hill v. Bridges, 6 Port. 197; Matkin v. Marengo County, 137 Ala. 155, 34 South. 171; Eutaw v. Coleman, 189 Ala. 164, 66 South. 464, and the other cases cited in Board of Revenue v. Merrill, 193 Ala. 521, 68 South. 971. We can only give an outline of the facts averred and proved. The total distance from Livingston to Eutaw, via Gainesville, Mt. Hebron, and Clinton, is approximately 38 miles; via Epes and Boligee the distance is approximately 6 miles less. Each route has its peculiar advantages and disadvantages; but, upon the whole, we are unable to see that the cost of construction, per mile, greatly differs between the two. But, because the Gainesville route will utilize the entire construction from Livingston to

Gainesville and as well a road already built, from Eutaw to Clinton, whereas the Boligee route would utilize only about 7½ miles of the Livingston-Gainesville construction, the highway proposed by the commission would require about 4 miles less of construction. True, the cost of maintenance must be considered. And, as to this, the problem presented to the commission is as follows: It is their bounden duty to construct a highway, not only between Livingston and Eutaw, but between Livingston and Carrollton, the county seat of Pickens, and between Carrollton and Eutaw. Between Livingston and Carrollton the road to Gainesville—and probably more of the Greene county project—will be used; from Eutaw to Carrollton the road to Clinton will be used. Presumably after due consideration of all the elements of advantage and disadvantage—but, whether so or not, the bona fides of its judgment is beyond impeachment—the Legislature, September 10, 1915 (Acts 1915, p. 366), adopted the route now adopted by the commission as a part of a state trunk road No. 7, "beginning at the city limits of Tuscaloosa and extending southward to Eutaw, Gainesville to Livingston." So likewise the commissioners' courts of Sumter and Greene counties have given their formal official approval to that route. And the evidence appears to support the assertion that a majority of the people of the two counties prefer a highway constructed along the route selected by the commission—this, most likely, upon consideration that the people who live along the Boligee route have the convenience of a parallel railroad immediately at hand, and that at least four much-traveled public roads lead into the road from Gainesville to Eutaw, which is itself the most traveled road in Greene county.

These things considered, we think it impossible to pronounce judgment to the effect that the state highway commission in electing to locate the highway between Livingston and Eutaw by way of Gainesville, Mt. Hebron, and Clinton, has so far abused their discretion in the premises as to afford a reasonable inference of fraud or corruption, or, indeed, that they have abused it at all. That the proposed route is not the most direct, is conceded, of course, on all hands; but, under the amendment, the commission has the right to select "the most feasible route by a permanent road, having due regard to the public welfare." On the proof submitted, we think it is impossible to affirm that the route selected is not the most feasible—practicable—having due regard to the public welfare. Our conclusion, therefore, is that the trial court very correctly ruled when it decreed a dissolution of the temporary injunction, previously issued on ex parte application, whereby further proceedings of the state highway commission, looking to the construction of

the highway in question, had been halted to await the further judgment of the court.

Affirmed.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.