(114 So. 415)

## UNION INDEMNITY CO. v. STATE, for Use of McQUEEN SMITH FARMING CO.
### (3 Div. 805.)

Supreme. Court of Alabama.    Nov. ·10, 1927.

1. **Bridges** ⬳20(1)—**Guaranty, added by state highway commission to bond of contractor on federal aid bridge, for protection of laborers and materialmen, held binding on surety (Code 1923, §§ 1303, 1316, 1319, 1328–1330, 1338, 1343; 23 USCA §§ 13, 23; 40 USCA § 270).**

Additional guaranty added by state highway commission to bond of contractor engaged in federal aid bridge project, providing for protection of laborers and materialmen, *held* binding on surety as· within contemplation of statutory requirement under Code 1923, § 1328, that contractor's bond shall be conditioned on performance of work in accordance with contract, in view of authority of state highway commission under sections 1303, 1316, 1319, 1329, 1330, 1343, and provisions relative to federal aid roads, section 1338; 23 USCA §§ 13, 23 (U. S. Comp. St. §§ 7477¼k, 7477¼v); 40 USCA § 270 (U. S. Comp. St. § 6923).

2. **Highways** ⬳95(1)—**State highway department has implied power to do all things incidental to powers conferred (Code 1923, §§ 1303, 1316, 1319, 1329, 1330, 1343).**

Code 1923, §§ 1303, 1316, 1319, 1329, 1330, 1343, providing duties of state highway department and empowering it to make necessary rules and regulations, imply power to do all things incidental and appropriate to accomplishment of its duties in businesslike and orderly manner.

3. **Bridges** ⬳20(1)—**Addition ·to bond of contractor on federal aid project of provision protecting laborers and materialmen held within authority of state highway commission (Code 1923, §§ 1303, 1316, 1319, 1328–1330, 1338, 1343; 23 USCA §§ 13, 23; 40 USCA § 270).** ,

Addition to bond of contractor engaged in federal aid bridge project of provision for protection of laborers and materialmen *held* within authority of state highway commission, in view of Code 1923, § 1328, prescribing requirements of bond, sections 1303, 1316, 1319, 1329, 1330, 1343, prescribing powers of state highway department, and section 1338; 40 USCA § 270 (U. S. Comp. St. § 6923); 23 USCA §§ 13, 23 (U. S. Comp. St. §§ 7477¼k, 7477¼v), relative to contracts for construction of federal aid projects.

4. **Bridges** ⬳20(1)—**Piling and sway braces furnished bridge contractor, ferriage in transporting men and materials, and hire for hauling supplies, held "labor, materials, and supplies," within contractor's bond.**

In action against surety on bond of road contractor constructing bridge under ·contract

with state highway commission, plaintiff's claims for piling and sway braces used for scaffolding to support men at work and materials of superstructure under construction, and for ferriage in transporting men and materials, and hire of man, team, and wagon for hauling machinery and supplies, *held* within guaranty of payments of sums due for "labor, materials, and supplies used in performance of this contract."

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Labor and Material.]

Appeal from Circuit Court, Montgomery County; Walter B. Jones, Judge.

Action for breach of surety bond by the state of Alabama, for the use of the McQueen Smith Farming Company, against the Union Indemnity Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Weil, Stakely & Cater, of Montgomery, for appellant.

The provision in the bond guaranteeing payment of labor, materials, and supplies used in performance of the contract is void and contrary to public policy of the state as defined by the statute; enforcement of said provision would deplete or diminish the security of the state. Code 1923, § 1328; Comm. v. Empire State Sur. Co., 50 Pa. Super. Ct. 404; Fosmire v. Nat. Sur. Co., 229 N. Y. 44, 127 N. E. 472; Kelley v. Torrington, 81 Conn. 615, 71 A. 939; Hughes v. Smith, 114 La. 297, 38 So. 175; Schisel v. Marvill, 198 Iowa, 725, 197 N. W. 662; 36 Cyc. 1147; Ill. Sur. Co. v. U. S., 240 U. S. 214, 36 S. Ct. 321, 60 L. Ed. 609; Ex parte Banks, 185 Ala. 275, 64 So. 74; U. S. F. & G. Co. v. Union T. & S. Co., 142 Ala. 532, 38 So. 177; Miller v. Bonner, 163 La. 332, 111 So. 776; Amer. Book Co. v. State, 216 Ala. 367, 113 So. 592. It is no answer to the foregoing that the performance of the contract has been accepted and approved by the state and that there is no outstanding liability on the bond in favor of the state. Fike v. Stratton, 174 Ala. 541, 56 So. 929; 6 R. C. L. 991, 996; 13 C. J. 695; Converse Bridge Co. v. Geneva, 168 Ala. 432, 53 So. 197; Ga. Fruit Exc. v. Turnipseed, 9 Ala. App. 123, 62 So. 542; Ellis v. Batson, 177 Ala. 313, 58 So. 193; Greil Bros. v. McLain, 206 Ala. 212, 89 So. 505. The power of the state highway commission to exact bond for benefit of materialmen, etc., cannot exceed the provision of the statute. Walker v. Chapman, 22 Ala. 116; Breen v. Kelly, 45 Minn. 352, 47 N. W. 1067; Park v. Sykes, 67 Minn. 153, 69 N. W. 712; Purcell v. Steele, 12 Ill. 93; Lyth v. Hingston, 14 App. Div. 11, 43 N. Y. S. 653; Becker v. Keokuk Waterworks, 79 Iowa, 419, 44 N. W. 694, 18 Am. St. Rep. 377; Palermo v. Madden & Co., 23 Pa. Co. Ct. 39. The items comprising the account are not labor, materials, and supplies, but are beyond the terms of the bond sued on and cannot be recovered. So. Sur. Co. v. Metropolitan Sewerage Comm., 187 Wis. 206, 201 N. W. 980, 204 N. W. 476; So. Sur. Co. v. Municipal Excav. Co., 61 Okl. 215, 160 P. 617, L. R. A. 1917B, 558; State v. Nat. Sur. Co., 148 Md. 221, 128 A. 916; Neb. C. & M. Co. v. Freeman, 197 Iowa, 720, 198 N. W. 7; U. S. F. & G. Co. v. Yazoo County, 145 Miss. 378, 110 So. 780; Beals v. F. & D. Co., 178 N. Y. 584, 70 N. E. 1095; U. S. v. Morgan (C. C.) 111 F. 474; May & Thomas v. McConnell, 102 Ala. 577, 14 So. 768.

Hill, Hill, Whiting, Thomas & Rives, of Montgomery, for appellee.

The state highway commission had plenary power in drafting the contract. Code 1923, §§ 1303, 1316, 1319, 1325, 1326, 1327, 1328, 1330, 1333, 1338, 1343. It had authority to include in the bond the provision in question, and, being an authorized provision, was covered by the statutory condition of the bond. Code 1923, § 1328. The bond having been voluntarily entered into, upon a sufficient consideration, the further agreement contained therein to guarantee payment of sums due for labor, materials, and supplies is valid and binding upon appellant. Ætna Cas. Co. v. Earle-Lansdell Co., 142 Va. 435, 129 S. E. 263, 130 S. E. 235; Title G. & S. Co. v. State, 61 Ind. App. 268, 109 N. E. 237, 111 N. E. 19; Road Supply Co. v. Kansas Co., 121 Kan. 299, 246 P. 503; S. W. Portland Cement Co. v. Williams (N. M.) 251 P. 380, 49 A. L. R. 525; State v. Royal Ind. Co., 99 W. Va. 277, 128 S. E. 439, 43 A. L. R. 552; 11 L. R. A. (N. S.) 1029; 18 A. L. R. 1227; 104 Miss. 626, 61 So. 700, 46 L. R. A. (N. S.) 325; 9 C. J. 25; 29 C. J. 611; Spraggins v. State, 183 Ala. 663, 63 So. 83; Hester v. Keith, 1 Ala. 316; Whitsett v. Womack, 8 Ala. 466; Munter v. Reese, 61 Ala. 397; Miller v. Vaughan, 78 Ala. 324; Andrews v. Ford, 106 Ala. 177, 17 So. 446; Cobb v. Thompson, 87 Ala. 383, 6 So. 373; Equitable Sur. Co. v. U. S., 234 U. S. 448, 34 S. Ct. 803, 58 L. Ed. 1394. The rental of men and teams, furnishing of piling and sway braces, and charges for ferriage, are within the terms "labor, materials, and supplies." 44 A. L. R. 381; Ill. Sur. Co. v. Davis, 244 U. S. 376, 37 S. Ct. 614, 61 L. Ed. 1206; U. S. v. Port Deposit Co. (D. C.) 272 F. 698; Taylor v. Connett (C. C. A.) 277 F. 945; 49 L. R. A. (N. S.) 1182; 22 R. C. L. 631; Hurley-Mason Co. v. Amer. Bonding Co., 79 Wash. 564, 140 P. 575; 9 C. J. 131; 4 R. C. L. 69.

BOULDIN, J. McQueen Smith Farming Company, suing in the name of the state, brings this action against the Union Indemnity Company, as surety on the bond of the Riley & Bailey Construction Company, contractor, doing construction work under contract with the state highway commission. The claim is for labor and material furnished by plaintiff to the contractor for use in the construction of the Reese's ferry bridge over the Alabama river.

The statute requires that the contractor's

bond "shall be in an amount equal to the contract price and conditioned to do and perform the work in accordance with the contract or agreement." Code, § 1328.

The bond given and sued upon was for the amount of the contract price, with condition that "such contractor shall faithfully and promptly perform said contract and all the conditions and requirements thereof," and with the following added provision:

"The said principal and sureties further agree as part of this obligation to pay all such damages of any kind to person or property that may result from a failure in any respect to perform and complete said contract, and guarantee the payment of such sums due for labor, materials and supplies used in the performance of this contract as set forth under special provisions."

By the "special provision," made part of the contract and bond by reference, the contractor agreed to pay all bills for labor, material, and supplies as they became due, to submit to the state highway department satisfactory evidence of such payment before final settlement, to give notice by publication of the day for final settlement, and "that all claims for nonpayment of labor, supplies, or materials employed or used in carrying out this contract must be presented to the state highway engineer on or before the date of final settlement. Any claims not filed on or before the date of final settlement are barred." Claims so filed were to be transmitted to the bonding company, and full performance not approved until they were paid or adjusted. A resolution had theretofore been adopted by the state highway commission requiring bond for the protection of laborers and materialmen.

[1] The principal question presented on appeal goes to the validity or binding effect upon the surety of the additional guaranty written into the bond in favor of laborers and materialmen.

Appellant's view is that the statutory bond payable to the state in amount of the contract price is for the protection of the state only; that enlarging the condition to let in laborers and materialmen divides, depletes, and may destroy the security provided by law to save the state harmless; that such added provision is ultra vires, against public policy, and must be read out of it as surplusage and unlawful. The question is new in this state. The decisions of other states, carefully collected and reviewed in briefs of counsel, are not in harmony.

Among the cases giving support to appellant's position are the following: Commonwealth v. Empire State Surety Co., 50 Pa. Super. Ct. 404; Fosmire v. National Security Co., 229 N. Y. 44, 127 N. E. 472; Schisel v. Marvill, 198 Iowa, 725, 197 N. W. 662; Miller v. Bonner, 163 La. 332, 111 So. 776.

The state highway department, consisting of a state highway commission, is charged with the general duty to designate, construct, standardize, repair, and maintain roads and bridges in this state. The state highway commission determines all questions relating to the "general policy" of the highway department, the conduct of its work, and the performance of its duties (Code, § 1303); has "general supervision" over construction and maintenance of all public roads and bridges where state funds are used (Code, § 1316); has power to adopt "all reasonable and necessary rules and regulations" for the construction of roads and bridges (Code, § 1319); such rules and regulations as may be deemed necessary (Code, § 1343). All contracts shall be made in the name of the state, approved by the state highway engineer, the state highway department, the president of the state highway commission, and the Governor (Code, § 1330). Besides the bond required of contractors, the interests of the state are safeguarded by limiting payments in the progress of the work to estimates based upon the materials placed and labor expended, not exceeding 85 per cent. of the contract price, reserving 15 per cent. until the work is completed and approved. Code, § 1329.

Manifestly, the state highway commission is a state agency with plenary powers in the construction and maintenance of a system of highways, for which purpose large funds are raised by bond issues and otherwise to be expended under the orders, rules and regulations of the commission with the approval of the chief executive of the state.

The mandatory requirement of bond and of limited payment in advance of completion are safeguards written in the statute. They do not negative the power to provide others such as may be deemed proper in the protection of all parties connected with this state enterprise. The statute does not prescribe forms of contracts.

The statutory condition to "perform the work in accordance with the contract" is very general, does not stand alone, but writes the contract into the bond. To the contract, with accompanying documents incorporated therein, all parties look for the detailed obligations undertaken by the contractor and his surety. Any provision defining these obligations, which may be incorporated into the contract, and by reference into the bond, may manifestly be incorporated into the bond directly.

[2, 3] The inclusive terms of our statutes conferring powers on the state highway department, a state agency engaged in a large business enterprise of public character, carry the implied power to do all things incidental and appropriate to the accomplishment of the work in hand in a businesslike and orderly manner. Does this include the authority to write into the contract and thereby into the statutory bond guaranties for the payment of bills for labor and materials? It is suggested by appellant that a separate bond

might be required to this end, but that the security of the statutory bond inures to the state alone, and all other provisions are void. We do not see that the statute contemplates more than one bond for the performance of the contract, nor a bond in excess of the penalty named in the statute. We confine our decision to the question of authority to stipulate for the payment of bills for labor and materials as part of the obligation of the contract, and of the statutory bond for its performance.

As related to the general powers conferred on the state highway commission, we note section 1338 of the Code looking to compliance with the terms of the Federal Highway Act, and the co-operative construction of federal aid roads. The bridge here involved was a federal aid project. Briefly our statute contemplates full compliance with federal laws and regulations lawfully made by federal authority to secure co-operative construction with the aid of federal funds.

All contracts for federal aid projects are subject to the approval of the secretary of agriculture. 23 USCA § 13 (U. S. Comp. St. Supp. 1925, § 7477¼k). The secretary is authorized to prescribe rules and regulations for the carrying out of the Federal Highway Act. 23 USCA § 23 (U. S. Comp. St. Supp. 1925, § 7477¼v).

Under the general law all contractors with the United States for the construction of any public work are required to enter into bond, with an additional provision to make prompt payment for labor and materials entering into the work. 40 USCA § 270 (U. S. Comp. St. § 6923).

It seems persuasive that this general policy of the federal government, if embodied in the regulations touching contracts for construction of highways with the aid of federal funds, becomes a part of the policy of this state under Code, § 1338. This implies authority in the highway commission to make like provision in the contractor's bond.

• The decisions of other states opposed to the validity of provisions in contractor's bonds for the payment of bills for labor and material involve the construction of statutes, which, it seems, were not so inclusive or plenary in conferring power to make contracts and to require bonds for the performance of those contracts. On the other hand, decisions of other states fully sustain the validity of such provisions. In some of these cases the statutes construed are not so inclusive as ours.

In Knapp v. Swaney, 56 Mich. 345, 23 N. W. 162, 56 Am. Rep. 397, Chief Justice Cooley emphasizes the moral duty of authorities contracting for public works to provide security for the benefit of those whose labor and material enter into construction. As public policy forbids the enforcement of liens on the improvement as in a case of individuals, this case and others hold that other security

should be provided; and that provision inserted, in compliance with such moral obligation, voluntarily and for a valuable consideration, should be sustained in the absence of statute forbidding them. Other cases point out that the state has an interest in providing such security, and, as an incident to the general power to make contracts, may provide such security in the contractor's bond.

The contractor, who has given such bond, has thereby established credit, is in position to command labor and material at the lowest price, and so enabled to bid for the work on a lower cost basis. Bidding is not limited to those having cash resources or established credit in the locality, but open to all who are able to make bond, and competition is thus extended. More vital, perhaps, such bond guarantees the doing of the work promptly and efficiently. Delays, loss of morale, inefficiency and waste, are likely to characterize a highway department whose work is tied up from time to time by nonpayment of laborers and materialmen, and by legal proceedings which follow. The bond is a guaranty that this shall not occur.

Moreover, public funds are intrusted to these agencies to be used in making public improvements. For the sake of those who labor and furnish material, and for the sake of the taxpayer, those who disburse these funds should see that they go into these improvements, which means into the labor and material making the improvements. Our laws are very inadequate if the highway department can provide no security against fraud upon the state and its citizens by an act of a contractor putting the state's money in his pocket and leaving bills for labor and material unpaid. An effective way is to require in advance a bond, with a guaranty company as surety, that this shall not occur, that the road or bridge be constructed as per contract, and those whose labor and material went into its construction be paid. We are convinced the state highway commission has full power to incorporate such provisions in the contract and bond required by statute. We cite the following authorities sustaining this conclusion wherein other citations may also be found: Ætna Casualty Co. v. Earle-Lansdell Co., 142 Va. 435, 129 S. E. 263, 130 S. E. 235; Southwestern Portland Cement Co. v. Williams (N. M.) 251 P. 380, 49 A. L. R. 525; Title Guaranty & Surety Co. v. State, 61 Ind. App. 268, 109 N. E. 237, 241, 111 N. E. 19; Road Supply & Metal Co. v. Kansas Surety Co., 121 Kan. 299, 246 P. 503; State v. Royal Indemnity Co., 99 W. Va. 277, 128 S. E. 439, 43 A. L. R. 552; St. Louis v. Von Phul, 133 Mo. 561, 34 S. W. 843, 54 Am. St. Rep. 695; National Surety Co. v. Hall-Miller Decorating Co., 104 Miss. 626, 61 So. 700, 46 L. R. A. (N. S.) 325; note to Denver v. Hindry, 11 L. R. A. (N. S.) 1028 et seq.; 29 C. J. p. 611, § 350; 22 R. C. L. p. 628, § 29.

The complaint averred, and evidence was

offered to show, that the bridge had been completed and accepted, and no liability on the bond in favor of the state remains at the time of suit brought. No question of priority or procedure under different conditions which may arise need be determined.

[4] Plaintiff's demand consisted of three classes of items: First, piling and sway braces used for scaffolding in the river to support the men at work and the materials of the superstructure while being constructed. This material, usually abandoned on completion of a bridge of this character, may be considered under the evidence as consumed in the using, and not a part of the contractor's general equipment. Second, ferriage in transporting men and material from one side of the river to the other in the course of the construction work. Third, hire of man, team and wagon for hauling machinery, timbers, and supplies for the contractor in connection with the building of the bridge.

All these come within the guaranty of payment of sums due for "labor, materials and supplies used in the performance of this contract." Illinois Surety Co. v. John Davis Co., 244 U. S. 376, 37 S. Ct. 614, 61 L. Ed. 1206; United States, to Use of Boyer v. Quarry Co. (D. C.) 272 F. 698; Shannon v. Abrams, 98 Kan. 26, 157 P. 449, Ann. Cas. 1918E, 502; Multnomah County v. U. S. Fidelity & Guaranty Co., 87 Or. 198, 170 P. 525, L. R. A. 1918C, 685; Smith v. Oosting, 230 Mich. 1, 203 N. W. 131; 29 C. J. 612, 613; note 49 L. R. A. (N. S.) 1182.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.