(No. 19374.—

A. D. STEWART, Appellant, *vs.* THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS *et al.* Appellees.

*Opinion filed October 19, 1929.*

514

SIGMUND LIVINGSTON, W. B. LEACH, and HERBERT M. LIVINGSTON, for appellant.

OSCAR E. CARLSTROM, Attorney General, G. E. NELSON, and HALL, MARTIN, HOOSE & DEPEW, for appellees.

Mr. COMMISSIONER PARTLOW reported this opinion:

On August 6, 1928, appellant, A. D. Stewart, and five other citizens and tax-payers of the village of Anchor, filed their bill for an injunction in the circuit court of McLean county to restrain the Department of Public Works and Buildings, the director thereof, the superintendent of highways and the Cast Stone Construction Company from constructing a concrete road on section 127 of bond issue Route 165, and to restrain the Auditor of Public Accounts and the State Treasurer from drawing any orders or making any payments on account of work done. The bill alleged that the route which will afford the most direct connection between the villages named in the statute is along

the line of the Kankakee and Southwestern railroad, which is a part of the Illinois Central; that there was a public hearing, at which it was determined that the route should be along the south side of the railroad; that thereafter a re-location was made by the Department of Public Works and Buildings to the route on which the road is being constructed; that a contract was entered into for section 127 with the Cast Stone Construction Company; that the village of Anchor is one-fourth of a mile south of the route selected; that the shortest and most feasible route for the road is on the south side of and parallel with the railroad between Colfax and Anchor; that complainants have offered to furnish the right of way over this route free of charge; that the Department of Public Works and Buildings is without authority to lay out the road or let the contract upon the route selected because it does not afford the village of Anchor reasonable connections with other towns, as provided in the statute. A limited appearance was entered by defendants, and they moved to dismiss the bill on account of the failure to comply with section 27 of chapter 69 of the statute. (Cahill's Stat. 1927, p. 1409.) Complainants claimed that this section only had reference to the State Treasurer and that the statute is unconstitutional. The court dismissed the bill as to the Auditor and Treasurer because of the failure to comply with this statute and overruled the motion as to the other defendants. Answers were filed, the evidence was heard in open court, the bill was dismissed for want of equity, and an appeal was prosecuted to this court by complainant Stewart.

On June 29, 1923, the legislature passed an act (Cahill's Stat. 1927, p. 2201,) which provides that a durable, hard-surfaced road shall be constructed along Route 165, described as follows: "Beginning at Sibley and extending in a southwesterly direction to an intersection with Route No. 9 at a point south of Merna affording Sibley, Anchor,

Colfax, Cooksville, Merna and the intervening communities reasonable connections with each other." Section 9 provides that the general location of the routes upon which the proposed roads are to be constructed shall be substantially as described in the section, so as to connect with each other, in substantially the manner therein described, the different communities and the principal cities of the State, and that the Department of Public Works and Buildings shall have authority to make such minor changes in the location of said routes as may become necessary in order to carry out the provisions of the act. Section 7 provides that the roads are to be constructed in strict accordance with the plans and specifications, estimates of cost and contracts of the Department of Public Works and Buildings.

Route 165 is about twenty-eight miles long and extends in a northeasterly and southwesterly direction, with Sibley at the east end and Merna at the west end. Sibley is about five miles north and twenty-three miles east of Merna. About eight miles west of Sibley is Anchor, an unincorporated village of about 200 people. West of Anchor about four miles is Colfax, and west and south of Colfax about six miles is Cooksville. All of these villages except Sibley lie along the Kankakee and Southwestern railroad, now a part of the Illinois Central, which runs in a southwesterly direction from Colfax to Merna. The railroad extends due east and west between Colfax and Anchor and then veers northeast from Anchor to the north line of McLean county. Route 165 is divided into several sections, one of which is No. 127, which extends east from a point about one-fourth of a mile east of the northeast corner of Colfax about six and one-half miles to a point about one-fourth of a mile east of the point where the route as laid out crosses the railroad on the road towards Sibley. Section 128 is east and section 126 is west of section 127. Both Colfax and Anchor are near the center line of government sections. The highway finally selected is

on the township line about one-fourth of a mile north of Anchor, thus leaving Anchor off of the main traveled hard road one-fourth of a mile. To remedy this, a spur is to be built extending south from the paved road to and through Anchor.

No complaint is made of this route as located except that part between Colfax and Anchor, a distance of about four miles. The road as laid out to which no objection is made extends west from Sibley about seven and one-half miles to the center of section 33, which is about one and one-half miles northeast of Anchor. It then extends south on the center line of the section to the railroad. It then extends southwesterly across the southeast corner of the west half of section 33, parallel with the railroad, until it connects with the road extending west near the southwest corner of section 33. It is from this point west that the dispute arises. The Department of Public Works and Buildings extended the road directly west from this point a distance of about four miles, past the north limits of Colfax and beyond the west limit of section 127. Appellant insists that from where the road extends southwesterly, parallel with the railroad, and connects with the road extending west four miles to Colfax, a change should be made, and that it should continue in a southwesterly direction, parallel with the railroad, through the center of Anchor and then extend west, parallel with the north line of the railroad, through the south part of Colfax. In other words, that the road from Anchor to Colfax should be moved south about one-half mile, so that it will extend through the center of both Anchor and Colfax and not miss Anchor about a quarter of a mile.

The statute does not designate the particular roads to be improved on Route 165. It specifies the limits of the route, its general direction and the villages to be served. The Department of Public Works and Buildings is vested with authority to select the particular highways, within rea-

sonable limits, on the general route designated by the statute and to make such minor changes in the route as may be necessary for the best interests of the people of the State. (*Wiley* v. *Department of Public Works,* 330 Ill. 312; *People* v. *Department of Public Works,* 320 id. 117; *Mitchell* v. *Lowden,* 288 id. 327.) The department does not have unlimited discretion in the location of the routes but only such discretion as is provided by statute. (*Watt* v. *Department of Public Works,* 328 Ill. 587; *MacGregor* v. *Miller,* 324 id. 113.) Where public officials are vested with discretionary power, a court of equity will not interfere to control such discretion unless fraud, corruption, oppression or gross injustice is shown. (*Stratton* v. *Henkel Construction Co.* 320 Ill. 526; *Hill* v. *Kimball,* 269 id. 398; *Hallett* v. *City of Elgin,* 254 id. 343.) Where two highways are available, each of which comes within the purview of the act and affords the communities reasonable connection with each other and with other communities, the department is authorized to select the one which is for the best interests of the State. (*Stratton* v. *Henkel Construction Co. supra.*) The fact that a route has been the main traveled route between two points for many years is evidence that it is the most direct and feasible route between those points. (*Watt* v. *Department of Public Works, supra.*) All the village of Anchor was entitled to under the statute was the right of reasonable connection with the other towns located upon Route 165. *MacGregor* v. *Miller, supra.*

The evidence shows that on April 26, 1927, a public hearing was held at Bloomington by the Department of Public Works and Buildings to determine the exact location of Route 165. It was practically determined at that meeting that the route should extend east along the south side of the railroad from Merna to a point where it runs east to Sibley. This route had no railroad crossings and passed through each village. A survey was later made of

this route and it was decided to re-locate it on the present route, making one railroad crossing at Merna and one west of Sibley. There are several reasons appearing in the evidence for such re-location. The route originally selected was largely over private property and very few public highways could be used. It would be necessary to build at least two bridges, at considerable expense, over the Mackinaw river. The road was in a poor state of repair and excessive grading would have to be done. There are not as many roads connecting with the south road as there are with the north road, and some of them would have to be extended to meet the new road. Just south of this south road is Route 9, which extends directly east from Bloomington for a considerable distance. In some places Route 9 is within two miles of the south road first selected and at the widest place it is about seven miles distant. The next east and west hard road is fourteen miles north of the railroad. There is a large area of rural community north of Route 165 which is not served by any hard road. It was decided to locate Route 165 as far north as possible and still serve the communities named in the act. One of the reasons for selecting the south road was to avoid crossing the railroad northeast of Anchor. After the south road was surveyed it was decided that the railroad was more or less local, and that the hard road and the nature of the community which it served justified a change of location, and that the north road would be of greater service to the communities. The north road, which was finally selected, was a State-aid road. It was the main traveled road between Colfax and Anchor and was traveled by more people living in that community than the south road. It had been graded and certain culverts had been put in, several of which could be used in the new road. Under all the facts in evidence the Department of Public Works and Buildings did not abuse its discretion in abandoning the route first selected.

The next question is whether the Department of Public Works and Buildings abused its discretion in locating the route between Anchor and Colfax. No complaint is made of the other twenty-four miles. As before said, the north highway as finally selected was a State-aid road and was the main traveled road from a point one-fourth mile north of Anchor west to Colfax. It had six roads leading into it, which were used by a large number of people. It had been graded and culverts had been put in, some of which could be used in the new pavement. The route sought by appellant southwesterly through the center of Anchor and west to Colfax, on the south side of the railroad and parallel with it, was almost entirely through private property. It had never been opened or graded. It contained no culverts. The culverts built would have to be larger than those on the north road. Several buildings would have to be moved. About one mile west of Anchor the land was low and considerable filling would have to be done. Anchor was unfortunate, as far as this hard road was concerned, in being located near the center of a section of land about one-half of a mile off of both east and west roads, which are located on the north and south sides of the section. The fact of its location, however, did not justify the construction of Route 165 through Anchor, provided in so doing it was not for the best interests of the State generally. The primary interest to be considered in the construction of hard roads is that of the State at large and not the interest of the particular locality in which the road is to be built, and when any local interest is in conflict with the interests of the State at large the local interests must yield to the interests of the State. (*Department of Public Works* v. *McCaughey*, 332 Ill. 416; *Watt* v. *Department of Public Works, supra; MacGregor* v. *Miller, supra.*) All that the statute required was that the villages named therein and the intervening communities have reasonable connec-

tion with each other. There was a north and south road leading to Anchor from the east and west hard road and a spur is to be built connecting Anchor with Route 165. When all of the facts were considered the Department of Public Works and Buildings selected the road from Anchor to Colfax which was most available and accommodated the most people of the communities served.

It is insisted by appellant that the chancellor was in error in dismissing the bill as to the State Auditor and Treasurer because of the failure to comply with section 27 of chapter 69 of our statutes, for the reason that the statute is unconstitutional. The constitutionality of a statute will not be determined when the case in which its determination is sought may be finally disposed of without such determination. (*Curtis Publishing Co.* v. *City of Chicago,* 273 Ill. 373; *Rittenhouse & Embree Co.* v. *Brown & Co.* 254 id. 549; *Illinois Central Railroad Co.* v. *Chicago and Great Western Railway Co.* 246 id. 620.) In the decision of this case it makes no difference whether the Auditor and Treasurer were or were not parties defendant or whether the statute in question is or is not constitutional. Appellant had no cause of action against the defendants against whom the hearing was had, he had no cause of action against the Auditor or Treasurer, and it is not necessary to determine the constitutionality of the statute.

We find no reversible error, and the decree will be affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Decree affirmed.*