74 So.2d 807

**W. G. PRUETT, Highway Director,**

v.

**LAS VEGAS, Inc.**

**3 Div. 710.**

Supreme Court of Alabama.

Oct. 1, 1954.

Rehearing Denied Oct. 14, 1954.

558

Bernard F. Sykes and Robt. Straub, Asst. Attys. Gen., and M. Roland Nachman, Jr., Montgomery, for appellant.

Jack Crenshaw and Ballard, Ballard & Akers, Montgomery, for appellee.

560

Hill, Hill, Stovall & Carter, Montgomery, for St. Francis Hotel Courts, amicus curiae.

LAWSON, Justice.

This is an appeal authorized by § 1057, Title 7, Code 1940, from an order or decree granting a temporary injunction, after notice and hearing as provided in § 1054, Title 7, Code 1940.

Appellant is the Highway Director of the State of Alabama, the chief executive officer of the State Highway Department, chargeable with the duty and responsibility of exercising all the power, authority and duties vested in that department. § 2, Title 23, Code 1940.

Among the duties imposed by law upon the Highway Department, to be exercised by the appellant as Highway Director, are the following: " * * * to designate the roads to be constructed, repaired and maintained and to construct, standardize, repair and maintain roads and bridges of this state * * *." § 3, Title 23, Code 1940, as amended. See Union Indemnity Co. v. State, 217 Ala. 35, 114 So. 415.

The appellant, in his official capacity, ordered the construction of a state road in Montgomery County to connect U. S. Highway 31 south of Montgomery (Mobile Road) with U. S. Highway 31 north of Montgomery (Birmingham Road), which road we will refer to as the proposed by-pass. Work leading to the construction of the proposed by-pass, in accordance with appellant's orders, was begun by officials and employees of the Highway Department.

Appellee corporation owns a motel known as the Las Vegas Motor Hotel, recently constructed at a cost in excess of $300,000, which is situated within the corporate limits of the City of Montgomery a few miles from the downtown section on U. S. Highway 31 south of Montgomery (Mobile Road). Appellee's motel is not far from the point where U. S. Highway 31 south of Montgomery is connected with U. S. Highway 31 north of Montgomery by a state road which we will refer to hereafter as the existing by-pass, since it presently affords to the traveling public a means of continuing on U. S. Highway 31 without going over the heavily traveled streets of the City of Montgomery.

The proposed by-pass, if constructed, would unquestionably divert some traffic which presently passes in close proximity to appellee's motel; hence this suit.

The real objective of appellee is to prevent the construction of the proposed by-pass and to accomplish that purpose it filed the instant bill, wherein it prayed for injunctive relief both temporary and permanent. The bill is also in the form of a bill or petition for declaratory judgment and prays not only for declarations to the effect that Pruett, as Highway Director, is without authority to construct the proposed by-pass, but also for declarations to the effect that Pruett and his surety, who is also made a party respondent, will be liable to appellee for any damages it may sustain by reason of the construction of the proposed by-pass, inasmuch as appellee claims that it constructed its motel at its present location only after being advised by Pruett and employees of the Highway Department to the effect that there were no plans to construct the proposed by-pass in the immediate future.

On this appeal we are concerned only with the question as to whether the trial court acted correctly in ordering the issuance of the temporary injunction which enjoins the appellant, individually and as Highway Director of the State of Alabama, "from expending any funds of the State of Alabama for the purpose of acquiring rights of way, preparing plans of [or] any other expenditures in connection with the proposed by-pass from US Highway 31 North to US Highway 31 South." As before indicated, the temporary injunction was issued after hearing and submission was had on appellee's verified amended bill, appellant's sworn answer, and on testimony taken orally before the trial court.

We have said that injunctive process in aid of a pending declaratory judgment suit is appropriate—Glass v. Prudential Ins. Co., 246 Ala. 579, 22 So.2d 13—and that the equity of a bill under the declaratory judgment law does not turn on whether a case is made for an injunction. Berman v. Wreck-A-Pair Bldg. Co., 234 Ala. 293, 175 So. 269.

■ On the other hand, a temporary injunction cannot be said to be properly issued merely because the prayer therefor is included in a bill filed in accordance with the provisions of the declaratory judgment law.

■ We have said that when a hearing is had on application for a temporary injunction, as authorized by § 1054, Title 7, Code 1940, the situation resembles in many respects a hearing on a motion to dissolve an injunction which was granted without a hearing. Generally, under such circumstances the court weighs the respective consequences to the parties and exercises a power which is largely discretionary when the bill shows a right to relief. State v. Mobile & Ohio R. Co., 228 Ala. 533, 154 So. 91. We have also said that where such discretion is not abused, the order of the circuit court will not be disturbed. Boatwright v. Town of Leighton, 231 Ala. 607, 166 So. 418.

■ But where there is grave doubt as to complainant's right, preliminary injunctive relief will generally be denied. Although it is not necessary that the trial court must first find that complainant has certainly a right, yet it must appear that he has a fair question to raise as to the existence of such a right and unless it so appears, then the court does not reach a consideration of the matter of balance of convenience or inconvenience to the one party or the other. Hancock v. Watt, 233 Ala. 29, 169 So. 704.

■ A conclusion that appellee has shown a right to declaratory relief is not sufficient to justify the issuance of the temporary injunction in this case. We must determine whether appellee showed that it has a fair question to raise as to the existence of a right to a permanent injunction or to a declaration of rights in accordance with its theory or contention.

■ The State of Alabama has been for a number of years engaged in the construction and maintenance of a system of public highways, a recognized constitutional function of government. State highway construction had its origin in Amendment I to our present Constitution. State Tax Commission v. County Board of Education, 235 Ala. 388, 179 So. 197. Other amendments to the Constitution of 1901 affecting the state road program were later adopted, some of which will be referred to hereafter.

■ The Legislature has general legislative powers over road and bridge construction and maintenance within the framework of the constitutional amendments affecting those functions. In re Opinions of the Justices, 226 Ala. 165, 145 So. 820.

As we have heretofore indicated, the location, construction and maintenance of highways has been committed by the Legislature to the Highway Department, such duties to be exercised by the Highway Director. §§ 1, 2 and 3, Title 23, Code 1940.

■■ The matter of locating, constructing and maintaining highways is not a function of the courts. In that matter the Highway Director exercises an adminis-

trative and quasi-legislative function which, when free from fraud or corruption, cannot be reviewed by the courts. Bouchelle v. State Highway Commission, 211 Ala. 474, 100 So. 884. And we have said that "A court of equity is without jurisdiction to determine the question of the public need for a highway." Alabama Great Southern R. Co. v. Denton, 239 Ala. 301, 195 So. 218, 221.

With those principles in mind, we come to consider the reasons asserted by appellee as to why a court of equity of this state should by its processes prohibit the duly appointed head of the Highway Department from proceeding with the construction of a public road which he had determined should be built. The reasons asserted appear to be four in number, which are as follows: (1) If the proposed by-pass is constructed, appellee and other business establishments located on or near the existing by-pass will suffer serious economic loss; (2) the construction of the proposed by-pass will result in an economic loss to the City of Montgomery; (3) the decision to construct the proposed by-pass constitutes gross, willful and flagrant abuse of discretion on the part of Highway Director Pruett; (4) the construction of the proposed by-pass would be illegal in that to do so would be violative of provisions of the Constitution and of laws of the state and contrary to its public policy.

It seems to be established that in all probability the construction of the proposed by-pass will result in an economic loss to the appellee and to others similarly situated. But this is no ground for a court of equity enjoining the Highway Director from constructing the proposed by-pass. No citizen or taxpayer, as such, has or can acquire any vested property right in a state highway which deprives the Highway Director of the power conferred by statute to construct roads and bridges. Parker v. State Highway Commission, 195 N.C. 783, 143 S.E. 871. Private inducements or considerations cannot rightly enter into the question as to whether a highway should be constructed. The controlling factor must always be the good of the general public and not the convenience or financial gain of the people who live along any particular way. Agnew v. Hotchkiss, 189 Wis. 1, 206 N.W. 849. We are not here dealing with the rights of one who owns property abutting on a highway to recover damages for its obstruction. See Purvis v. Busey, 260 Ala. 373, 71 So.2d 18; Ayers v. Stidham, 71 Ala. 390, 71 So. 2d 95.

The existing by-pass is within the corporate limits of the City of Montgomery, whereas the proposed by-pass is to be constructed almost entirely outside the corporate limits of that city. This change, appellee contends, will result in a considerable loss to the City of Montgomery in the way of gasoline taxes and license taxes, and for that reason appellee says equity should enjoin the construction of the proposed by-pass. There is clearly no merit in this contention. The construction of a state road cannot be made to depend upon appellee's concern as to the resulting economic effect on a city of the state. See Stewart v. Department of Public Works and Buildings, 336 Ill. 513, 168 N.E. 372.

Appellee refrains from expressly alleging that appellant's decision to construct the proposed by-pass was the result of fraud or corruption, leaving that conclusion to be drawn from such averments as "that the selection of said project of construction [proposed by-pass] to be done at this time and prior to other necessary highway construction results from a decision not made upon the merits and not made in the bona fide discharge of his official duty by the Respondent but made for the purpose of political expediency or the bestowal of political patronage or other improper purpose * * *", which averments follow those to the effect that the construction of the proposed by-pass will result in the needless and improper expenditure of a large amount of state money, because the existing by-pass is amply sufficient to carry all traffic without routing it through the downtown business district of the City of Montgomery and without crossing any residential streets, whereas the proposed by-pass will intersect five residen-

tial streets and will be only a two-lane way, whereas the existing by-pass will soon be a four-lane way; that appellant has failed to give thorough consideration to the extent to which the public welfare will be damaged by the construction of the proposed by-pass and has refused to hold a requested public hearing to determine whether the construction of the proposed by-pass will be in the public interest and serve the public welfare; that in order to avoid a public hearing, the appellant elected to construct the proposed by-pass solely from the funds of the State of Alabama rather than with federal aid, although before the public hearing was requested he had indicated federal aid would be sought. It is on such averments that appellee concludes that the decision to construct the proposed by-pass results from gross, willful and flagrant abuse of discretion by appellant.

As we have heretofore shown, it is not for appellee or a court of equity to usurp the prerogatives of the Highway Director as to a determination of the public need for a highway or as to its location. Bouchelle v. State Highway Commission, supra; Alabama Great Southern R. Co. v. Denton, supra. In so far as we are advised, appellant was under no obligation of law or custom to hold a public hearing, having determined that the road be constructed from state funds, without federal aid, which decision appears to have been his to make.

Appellant in his sworn answer emphatically denied the averments of appellee's bill to the effect that his decision to construct the proposed by-pass was made "for the purpose of political expediency or the bestowal of political patronage" or that it was made for any improper purpose. Appellee called no witnesses to give any evidence tending to support those serious charges in his bill. Appellant, as a witness, denied such charges. True, on cross-examination of appellant many questions were asked which sought to give the impression that appellant was building the proposed by-pass for the purpose of enhancing the value of land owned by an individual assumed to be the political friend of the present state administration. But the answers completely refuted the implications contained in the questions. The record in this case has been carefully read and we are clear to the conclusion that it utterly fails to support a finding that appellant, in electing to construct the proposed by-pass, has so far abused his discretion as to afford a reasonable inference of fraud or corruption, or indeed that he has abused it at all. Bouchelle v. State Highway Commission, supra.

It appears that the proposed by-pass, when constructed, will be in most respects in accordance with plans suggested a number of years ago by the City of Montgomery for the construction of roads around the city to relieve the downtown section of some of the through traffic. Such road or roads are sometimes referred to in the evidence as the belt line road. But in one respect the proposed by-pass does not conform to that plan and the change calls for the proposed by-pass to be constructed through the land which, according to the record, is owned by the individual alluded to above. This change, it is said, in effect, shows the true purpose of appellant. We cannot agree. The evidence shows without contradiction that appellant had given no instructions for such a change to be made, but that the change was effectuated by field engineers of the Highway Department, career men, whose testimony shows that the change was made in accordance with proper road engineering practices.

We come now to consider those grounds worthy of treatment on which appellee bases its contention that the construction of the proposed by-pass would be illegal.

Amendments to the Constitution, sometimes referred to as Articles XX and XXA, like the First Amendment to our State Constitution, to which we have heretofore referred, confer authority on the state to engage in the construction and maintenance of highways and bridges and, like the First Amendment, they authorize the state to appropriate monies for such purposes. But unlike the First Amendment, both XX and

564

XXA, supra, provided for the issuance of bonds and both contain language substantially as follows:

"The state highway commission or highway department shall locate, construct and maintain highways and state trunk roads so as to connect each county seat with the county seat of the adjoining county by the most direct or feasible route or by a permanent road, having due regard to the public welfare; * * *. It shall be the duty of the highway commission or highway department to equitably apportion among the several counties of the state the expenditure of both money and labor and the time or times of making such investment."

Appellee says that the proposed by-pass will not connect a county seat with the county seat of an adjoining county by the most direct or feasible route, having due regard to the public welfare, and also that to use the money needed to construct the proposed by-pass would result in an inequitable apportionment of highway funds, giving to Montgomery County more than that to which it is entitled. Based on these alleged violations of the restrictions of XX and XXA, supra, appellee asserts that equity should declare the appellant without authority to construct the proposed by-pass and grant injunctive relief.

None of the funds derived from the sale of the bonds issued under the authority of XX and XXA, supra, are available for use in the construction of the proposed by-pass. Such funds were expended long ago.

■ We are clear to the conclusion that the restrictions of those two constitutional amendments which we quoted above had application only to the use of the funds derived from the bond issues there provided for. See In re Opinions of the Justices, 226 Ala. 165, 145 So. 820.

■ No such restrictions are contained in the First Amendment to our Constitution or in amendments subsequently adopted which, like the First Amendment, are amendatory of § 93 of the Constitu-

tion of 1901. However, § 34, Title 23, Code 1940, reads:

"The highway department shall locate, construct, and maintain highways and state roads so as to connect each county seat with the county seat of the adjoining county by the most direct and most feasible route by a permanent road, having due regard to the public welfare and to connect the county seats of the several border counties at or near the state line with a public road in the border states."

The provisions just quoted are directory, but are not intended to restrict the Highway Department in the construction of other state roads and highways. Certain it is that such provisions were not intended to prevent the use of state funds in the construction of a by-pass such as here proposed, which is to be constructed for the purpose of forming a part of a belt line road or highway around the third largest city in the State of Alabama.

This matter of going to the courts to enjoin the Highway Director from constructing roads seems to be a practice during the last few months of the term of office of the governor under whom the director is serving. It happened just about four years ago. We know judicially that such was the case and we also know that one of the grounds asserted for the issuance of the injunction was that the then director was letting contracts for the construction of a number of so-called "farm to market roads" to be paid for entirely out of state funds with no federal aid, and to permit such to be done would result in the depletion of state funds needed for the matching of federal aid. We refused to intervene.

■ The State of Alabama has assented to the provisions of an act of Congress known as the Federal Aid Highway Act of 1944, 23 U.S.C.A. §§ 60–63, Acts 1945, p. 204, § 32(1). Title 23, 1953 Cumulative Pocket Part, Vol. Five, Code 1940. But no law has been brought to our attention which says that the director cannot build a state road without federal aid. The fact that appellant decided to build the pro-

posed by-pass without the aid of federal funds is no ground, in our opinion, for the issuance of an injunction in this case. According to the record before us, there will be sufficient state funds to match federal aid through the year 1957.

■ It is said that equity should enjoin the construction of the proposed by-pass because the State acquired rights of way, although Montgomery County had neither failed nor refused to acquire them. Section 25, Title 23, Code 1940, as amended, does provide that rights of way deemed necessary by the Highway Department for the construction of a state road are to be acquired by the county or municipality, the costs to be paid by the State, and that if the county or municipality fails or refuses to acquire such rights of way, then the Highway Director is authorized to acquire them. But the manner of acquiring rights of way is of no concern to appellee. Certain it is that a court of equity will not, at the instance of one situated as is appellee, say to a highway director not to build a road because he or the employees of the department which he heads have secured rights of way directly from the landowners across whose lands the road is to be constructed.

We have given careful consideration to the record before us and to the principles of law which we deem to be applicable, and it is our opinion that the temporary injunction should not have been issued.

In view of the conclusion reached, we have given no consideration to the contention made by appellant that the action of the court below was erroneous for the reason that this is in fact a suit against the State and violative of § 14 of the State Constitution.

The decree appealed from is reversed, and one here rendered dissolving the injunction heretofore issued, and the cause is remanded to the court below.

Reversed, rendered and remanded.

All the Justices concur except MERRILL, J., not sitting.