104 So.2d 907

**Willie L. WRIGHT et al.**

v.

**PICKENS COUNTY et al.**

2 Div. 386.

Supreme Court of Alabama.

Aug. 28, 1958.

B. G. Robison, Jr., Carrollton, for appellants.

Curry & Kirksey, Carrollton, for appellees.

GOODWYN, Justice.

This is an appeal from a decree of the circuit court of Pickens County sustaining respondents' (appellees') demurrer to complainants' (appellants') bill of complaint as last amended.

Respondents demurred to the original bill and to its several aspects, assigning, in all, 39 grounds. The demurrer was sustained. The bill was then amended by adding thereto paragraphs 5.1 and 6.1. The respondents refiled their demurrer to the bill as thus amended. This appeal is from the decree sustaining that demurrer.

The bill alleges that complainants are over the age of 21 years, are all taxpayers in Pickens County, and that all, except complainant K. A. Scott, are residents of Pickens County, Scott being a non-resident of the State. It further alleges that the respondent Pickens County is "an involuntary body corporate, organized and existing under and by virtue of the laws of the State of Alabama"; that the other named respondents are the regularly elected and qualified members of the court of county commissioners of said county; that said court of county commissioners "is the governing body of said county and as such has and exercises legislative, administrative and judicial functions and powers, with particular and exclusive powers and func-

tions and broad jurisdiction in respect and relation to the establishment, change, maintenance and discontinuance of public roads and highways in said County, as provided by the laws of the State of Alabama." As last amended the bill contains the following additional allegations:

"4. That under and by virtue of the laws of the United States of America and the State of Alabama, there exists a system for the financing of the cost of road construction in the Counties in said state whereby 50 percent of the cost of said roads is borne by the United States Government, and 25 percent of such cost borne by each the State of Alabama and the County in which said road is to be built and whereby said roads are built in conformity with the laws of the United States, the rules and regulations of the U. S. Bureau of Public Roads, the laws of the State of Alabama and the rules and regulations of the Highway Department of said State and the acts and doings of the Court of County Commissioners or other governing body of the County within whose bounds such a road is to be built; that such a road is known as a 'State Grant County Project Road' and designated as an 'SGCP' road project and that under the laws and rules and regulations of such Federal and State governments and agencies, which are administered by Agencies of the State in the case of each project so originating, organized and set up, the State with 50 per cent Federal Funds and 25 per cent State funds matches 25% of the Cost of said roads supplied by the County from County funds and which said funds, under said laws, rules and regulations, cannot be obtained by borrowing or by issuing warrants in anticipation of funds coming to the County from State Gas Tax Funds but must be funds which the County has on hand for use in road construction and originating otherwise than from State Gas Tax Funds distributed or to be distributed to the various Counties from the fund consisting of three cents of the State Gas tax on each gallon of Gasoline sold within the State

or from the proceeds of warrants issued in anticipation of money to be received from each Gas tax fund.

"5. Complainants further show that the said Court of County Commissioners caused a road to be surveyed and located in said County along a line from Lamar County line near Andrews Chapel and Liberty School Southwesterly to Ethelsville and on Southwesterly down through the Macedonia Community to Bethel Church and thence on Southwesterly to and through the Pine Grove Community intersecting the Carrollton-Pine Grove road at or near the Churches and Community House in Pine Grove Community and continuing along said Pine Grove-Carrollton road to its intersection with Alabama Highway No. 40 near the Mississippi State Line and submitted said road for approval by the State of Alabama Highway Department; that said Highway Department disapproved said road on account of the fact that it had as its Southern terminus a road not a State Highway; that as located from Bethel Church to said intersection of said Carrollton-Pine Grove Road, said road, designated as SGCP–2–54C followed along a route whereby it would have served well as a road to benefit complainants and many other persons along said route and would have served the general public advantageously and in order for it to have been approved by the Alabama State Highway Department for construction as an AGCP project, it would have only been necessary to extend said road Southwesterly for about four miles over a route crossing no streams of consequence and requiring no bridges but serving numbers of residents along the way and living on lateral roads to said route; that, instead of so locating said road and permitting the same to run through the central part of the Pine Grove Community at its Churches and Community House said Court by a motion offered by Commissioner F. H. Sanders, seconded by Commissioner W. W. Curry and carried without a dissenting vote caused said road location to be changed from Bethel Church Southward along a road running from the fork up to a mile West of the road originally laid out and intersecting the Carrollton-Pine Grove road at or near the present intersection of two dirt roads, one of which is to be the improved Carrollton-Pine Grove road and near the home of Braxton Oswalt, approximately one mile west of the center of said Pine Grove Community as aforesaid and so located and laid out that if completed it will serve far fewer persons and benefit the general public far less than would have a road built according to the original survey as extended Southwesterly as aforesaid.

"5.1 (Added by amendment) Complainants would further show that at a meeting of the Court of County Commissioners at some time near the month of September, 1954, some of the complainants and others appeared in an effort to cause to be built and constructed a road running from Bethel Church to the Pine Grove Community Center substantially as described in Paragraph 5 at its beginning; that it was the expressed wish and desire of those so appearing to have a passable gravel road constructed along said route to enable some of the people living along said route to have an outlet to the County road system and others to have better approaches and accesses to said system and its highways; that it was pointed out to the Court that some of the people along said route had no outlets to public roads except long private roads, ill constructed, ill drained and impassable in bad weather and that a public road laid out and constructed along the route above described would be of great benefit and service to a large number of the inhabitants of the area as well as the general public; members of the Court expressed agreement that a road should be built but suggested and urged that a survey of the road be made by the County Engineer, that a right of way wide enough to permit construction of a black top road to meet Federal and State specifications be staked out and obtained; that later such a survey by the County Engineer was made of a road following substantially the route above described but running into the Mc-

Shan-Pine Grove road near the house of the Complainant Willie L. Wright; that employees of the Pickens County Road Department using bulldozers, graders and other County equipment and tools, cleared a right of way 80 feet wide through portions of the said route as the same was surveyed through woods and fields of those living along the same; that some of the members of the Court of County Commissioners rode over said route and expressed approval of the same as being in the place that it should be; that said clearing and the uncompleted grading and construction done along said route and in the right of way designated for said road but never granted by the owners, was done at a large expense for the clearing, grubbing and grading and resulted in considerable damage to the property over which it was done, but the said road has never been made passable except over a small portion of the same and was abandoned by the County when the Court of County Commissioners on motion of Commissioner Sanders and second of Commissioner Curry, voted unanimously to change the said road from the course where at the expense of the County and to the damage of the property owners along the route, a large part of the right of way of the road had been cleared and a marked percentage of the grading for a road bed along the same had been done, and to locate the same as last described in paragraph 5 of the original bill of complaint; that in all about two and one half miles of right of way eighty feet wide were cleared, about a half mile of said road on the lower end was gravelled and at this time there are piles of gravel and spread gravel on said right of way over which traffic by the public is impossible and which is not used as a road way; and complainants aver that respondents in equity and good conscience should not be permitted to abandon this stretch of partially constructed road over and along which, in the construction which has been abandoned, great damage was done to the land of the property owners through which it runs and great expense incurred by Pickens County, all of

the said damage having been done after the landowners agreed that the said eighty foot right of way be taken across their said lands without cost provided the respondents would cause the said road to be constructed thereon.

"6. Complainants would further show unto the Court that the said road as finally located and surveyed will be of great benefit only to those who live right on the same, that the same will not connect with lateral roads and afford those persons living on lateral and connecting roads access to the use of it to the extent that a road built by the extension of the original location of said road would have done and that the few persons living along it would have much better access to good roads if said road had been built as originally planned and extended than complainants and those many others who live along the original proposed road and its connecting roads would have if the said road is built according to the present plan of the respondents, and that generally said road as so located will not be of benefit to the taxpayers, and residents of Pickens County nor to the general public.

"6.1 (Added by amendment) Complainants would further [sic] unto the Court that there would be less bridging and fill work to be done on the extension of the original route proposed for said road and that the utilization of the right of way which the Respondents have caused to be cleared and partially graded as aforesaid and which they have abandoned would make said road be cheaper to construct, and the same would have a tendency to develop the center of the Pine Grove Community located at the intersection of said road with the Carrollton-Pine Grove road and that if said road is not utilized, a large number of those persons whom it was originally intended to serve will be yet without access to a public road and large sums of County money will have been expended in the commencement of the construction of a road which if not completed will result in a waste and total dead loss of the funds

so expended and leave a devastated strip of land eighty feet wide and some two and one half to three miles long across lands of some of the complainants and others who in good faith consented and agreed that said lands might be used without cost to Pickens County for the construction of a road and in return for their said agreements, the Respondents, at a great expense, laid waste to the lands, broke their agreement, abandoned the route and left said people more in need of a road than before any action was taken by the Court on said road.

"7. The Complainants would further show unto the Court that at the regular December, 1956, meeting of the Court of County Commissioners of said County a motion, made by W. W. Curry and seconded by F. H. Sanders, was adopted without a dissenting vote, that the Court authorize W. E. Farrar to issue $260,000.00 three cent gasoline tax warrants to meet Pickens County's share of Pine Grove Road, Ethelsville Road North and Ethelsville Road South and Echola Road at best interest rate possible, and pursuant to said action and at its adjourned meeting on January 3, 1957, the Court authorized the issuance of $260,000.00 'Series A. Warrants' bearing interest at 4¼% per annum until maturity and 6% per cent per annum thereafter and set up a special fund known as 'State Gasoline Tax Anticipation Warrant Fund A' and set up a schedule of payments to be made into said fund from January 1957 to and through July 1970, to be paid solely from (a) sums which shall become due and payable to County as payment of its share of State Tax and allocated and distributed pursuant to Section 655 of Title 51 of Code of 1940 as amended (b) all State tax coming to County pursuant to provisions of Section 657 of Title 51 of Code of Alabama as amended (c) all sums payable to County by any succeeding, corresponding, equivalent, amended, supplemental or additional act or provision of law authorized or related to collection received by or apportioned to the County from gasoline or other motor fuels taxes and which

County shall be lawfully authorized to transfer, pledge and assign.

"8. Complainants would further show that at said adjourned meeting of the Court of County Commissioners on January 3, 1957, said Court on the vote of Chairman Farrar and Commissioners Davis, Curry and Sanders, the then Commissioner Cook, being absent, the Court accepted the offer of R. W. Knight and Company of Birmingham, Alabama for the purchase of $260,000.00 principal amount of 4¼% State Gasoline Tax Anticipation Warrants, Series A, dated August 1, 1956, for the purchase price of 97½% of the face value of such warrants and authorize the Chairman of the Court to deliver the Warrants."

The relief prayed for is as follows:

" * * * that upon a Final Hearing hereof, your Honor will make and render an appropriate order, judgment and decree declaring that the location of the road SGCP–2–54C South as last surveyed and planned by the Court of County Commissioners of Pickens County, Alabama is such that the construction of it will not be for the benefit of the general public and will be against the interest of the general public as well as complainants [and] those persons who live in the surrounding areas and whom it should serve; that the issuance by the Court of County Commissioners of Pickens County, Alabama of the Series A 4¼% State Gasoline Tax Anticipation Warrants to raise funds to match Federal and State funds in order to construct State Grant County Project Roads is in [sic] improper and illegal;

"Complainants further pray that your Honor will grant and issue a permanent injunction perpetually enjoining the respondents from constructing said road as presently located and from obtaining State Grant County Project State and Federal road construction funds with match-

ing funds raised by the issuance of State Gasoline Tax Anticipation Warrants."

There is also a prayer for general relief.

Some 17 grounds of the demurrer are addressed to the bill as a whole, 11 grounds "to that aspect of the bill seeking to have the court order that the construction of said road, as last surveyed and planned is such that it would not benefit the general public and will be against the interest of the general public as well as the complainants and those persons who live in the surrounding areas and whom it should serve," and the remaining 11 grounds "to that aspect of the bill seeking to have the court order that the issuance by the court of county commissioners of Pickens County, Alabama, of the Series A 4¼% State Gasoline Tax Anticipation Warrants to raise funds to match Federal and State funds in order to construct State Grant County Project Roads is improper and illegal."

The position taken by appellants is that the bill is one for declaratory judgment; that it presents a justiciable controversy which should be settled, and for this reason the demurrer should have been overruled and a declaration of rights made and entered "only after answer and on such evidence as the parties may deem proper to introduce on submission for final decree." Curjel v. Ash, 263 Ala. 585, 589, 83 So.2d 293, 296, and cases there cited.

It is our view that the demurrer to the bill as last amended was properly sustained. Even if the bill should be construed as having two aspects, one with reference to the construction of the road and the other with respect to the issuance of the warrants, neither presents a situation authorizing a declaratory judgment.

The powers of courts of county commissioners with regard to public roads are prescribed in § 43, Tit. 23, Code 1940, as amended by Act No. 729, appvd. Sept. 17, 1953, Acts 1953, p. 984. See, also, §§ 5 and 11, Tit. 12, Code 1940.

It has been held that the exercise of the discretionary power given to the boards mentioned in § 43 cannot "be restrained or reviewed, unless it has been in a fraudulent, corrupt, or unfair conduct of the business of the county." Ensley Motor Car Co. v. O'Rear, 196 Ala. 481, 483, 71 So. 704, 705; Bentley v. County Commission for Russell County, 264 Ala. 106, 109, 84 So.2d 490, 493.

In the O'Rear case it is said:

"In the location, erection, repair, or removal, or in the furnishing of the county's buildings, bridges, and roads, the court of county commissioners or board of revenue have a discretion that cannot be exercised for them by any other county official, or directed by any court, except only when their acts are such as amount to fraud, corruption, or unfair dealing. In the performance of these statutory duties, boards of revenue and courts of county commissioners exercise a function that is quasi legislative. * * * In Town of Eutaw v. Coleman, supra [189 Ala. 164, 66 So. 464], this court said: 'We are not dealing with any question of the advisability of what the commissioners have done. There is no charge of fraud, corruption, or unfair dealing, and, in the absence of some such charge, this court is committed to the doctrine that in no case involving the exercise of discretionary power by the court of county commissioners will their action be controlled by any judicial tribunal.' "

From the Bentley case is the following:

" * * * Our cases are to the effect that the action of a county governing body in the exercise of discretionary powers vested in it is not subject to judicial review except for fraud, corruption or unfair dealing. * * *"

Appellants' brief contains the following statement:

" * * * [I]t is also possible that the equity of the bill of complaint is sustained by alleged unfair dealing of the Commissioners in connection with the location of the road, securing right of way for the road, commencing the road across lands of some of the complainants, clearing the right of way, grading the road in part and then abandoning the same after having damaged the property of some of the parties complaint. Most certainly there is a controversy in connection with the location of the road, and the proposed building of the same as laid, and the interests of the parties in the same, the adverse effect on their interests and the unfair dealing in the changing and location of the same would all seem to present a justiciable controversy which should be settled by a declaration of the rights of the parties made and entered after answer and evidence * *."

Appellants' argument, as we understand it, is that the bill contains allegations sufficient to show "unfair dealing" by the court of county commissioners in clearing a right of way over lands of appellants and then abandoning such proposed roadway in favor of the location here complained of, it being further alleged that the new location will not be for the benefit, but against the interest, of the general public as well as the complainants and those persons living in the surrounding areas. In the final analysis, the real issue in the case seems to be whether the bill sufficiently alleges "unfair dealing" by the court of county commissioners, within the stated principle authorizing judicial review.

From Pruett v. Las Vegas, Inc., 261 Ala. 557, 561–562, 74 So.2d 807, 810, is the following:

"The matter of locating, constructing and maintaining highways is not a function of the courts. In that matter the Highway Director exercises an administrative and quasi-legislative function which, when free from fraud or corruption, cannot be reviewed by the courts. Bouchelle v. State Highway Commission, 211 Ala. 474, 100 So. 884. And we have said that 'A court of equity is without jurisdiction to determine the question of the public need for a highway.' Alabama Great Southern R. Co. v. Denton, 239 Ala. 301, 195 So. 218, 221."

In Alabama Great Southern R. Co. v. Denton, 239 Ala. 301, 305, 195 So. 218, 221, supra, it is stated as follows:

"The Court of County Commissioners is given general jurisdiction, with legislative, executive and judicial powers, over the matter of providing a system of county roads. * * *

"When the question of the need for a public road is involved, the law commits this to the county authorities. The matter of the creation or discontinuance of a public road is legislative. The legislative body may and should consider all factors, the public need and convenience, the expense of the road system, the hazards and expense of frequent grade crossings over railroads, &c.

"These matters are of legislative, not of judicial cognizance. *A court of equity is without jurisdiction to determine the question of the public need for a highway.*" [Emphasis supplied.]

As to the gas tax warrants, there does not appear to be any justiciable controversy existing between the complainants and respondents. It affirmatively appears from the bill that the warrants have already been authorized and issued. Instead of showing a justiciable controversy it seems to us that the bill is more in the nature of a review of action already taken by the court of county commissioners. Such a review is not available by way of declaratory judgment. In the recent case of Johnson v. Yeilding, Ala., 100 So.2d 29, 32,[1] in referring to the holding in the case

of Mitchell v. Hammond, 252 Ala. 81, 39 So.2d 582, it was said:

"* * * It is made very clear in that case that a declaratory judgment is not available to review the ruling of a board which has acted on a matter on which it is authorized by law to act: that the procedure cannot serve the purpose of a review of nisi prius action. Therefore, it was held that the court was without authority to entertain the bill. That is the status of the instant suit."

The decree appealed from is due to be affirmed. So ordered.

Affirmed.

LAWSON, SIMPSON, STAKELY and MERRILL, JJ., concur.